[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 311 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 312 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 313 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 314 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 315 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 316 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 317 
The 47th section of the act, under which the petition of the insolvent in this case was presented, provides, that "wheneverany authority shall be exercised by any officer, "pursuant to any provisions of this title, the proceedings may "be removed into the supreme court by certiorari, and there "examined and corrected." Whenever an adjudication is made by the officer, upon any question of law or fact, it is hardly necessary to say, that he exercises an authority; and when this is done, the proceedings may be removed, by the express provisions of the act, to the supreme court, for review and correction.
The term "proceedings," in its more general sense in law, *Page 320 
means all the steps, or measures, adopted in the prosecution or defense of an action. (Webster's Dict.) It may mean more than the record history of the case, which was the definition of the learned counsel for the defendant. It is, undoubtedly, sometimes used in this restrictive sense. In its ordinary acceptation, the word, when unqualified except by the subject to which it is applied, includes the whole of the subject. Thus the proceedings of a suit embrace all matters that occur in its progress judicially. Proceedings upon a trial, all that occurs in that part of the litigation.
The subject specified in the section under consideration is, "an authority exercised by the court or officer, pursuant to any "provisions of the title." The "proceedings," by which I understand all the matters connected with, or attending the exercise of the power, which are necessary to enable the court of review to determine its validity and correctness, may be removed by the writ, and examined.
The authority and duty of the supreme court, therefore, to review and correct all errors, in matters of law, committed by an officer, in the exercise of this extraordinary jurisdiction, cannot be justly questioned. This is all that is necessary to the determination of the present case. It is singular that the right should ever have been doubted.
The power to discharge a debtor from all obligation to his creditors, without satisfaction, and against their consent, is one of the most delicate and important that can be conferred upon any tribunal.
That its exercise should have been committed to a county officer, without any mode of correcting his errors, except those relating to his jurisdiction, or appearing upon the record; thus making his adjudications upon all questions of law, arising upon evidence, or without it, conclusive; would be an act of improvidence upon the part of the legislature, which ought not to be presumed, and of which, as I construe the statute, they have not been guilty.
Such I infer would have been the opinion of the court below, *Page 321 
were it not for the adjudications in that court, in Birdsall v.Phillips, (17 Wend. 464,) and Prindle v. Anderson, (19Id. 396.) These cases arose under the landlord act, 2 R.S. 516.
The 47th section of that statute provided that the supreme court might "award a certiorari for the purpose of examining "any adjudication made in virtue of that act." In opposition to this explicit language, the supreme court determined that thecertiorari was confined to questions of jurisdiction, and those arising upon the record. (19 Wend. 396.) These decisions were subsequently reviewed in the court of errors; and in Anderson
v. Prindle, (23 Wend. 616,) the chancellor, in delivering the opinion of the court, remarked, that "the legislature "intended to give the supreme court full and competent power "to examine upon the merits every decision of the judge, a quo, "upon a question of law, and to affirm, reverse or quash the "proceedings, as justice may require." (23 Wend. 618.)
In Noble v. Post, (25 Wend. 313,) the counsel for the appellant was stopped by the chancellor, when about to discuss the propriety of sending up testimony in answer to the writ, and informed that such a return was authorized; and the decision inPrindle v. Anderson on the point was referred to, as one in which the court had concurred, at a previous term. No judge dissented, or expressed a doubt as to the construction given to the statute by the chancellor.
It has been urged that the judgments of the supreme court were affirmed in error upon other grounds, and therefore that their decision upon this point was not directly overruled.
This is true; but it cannot be denied that as evidence of the law, those adjucications cannot be regarded as conclusive authority, even in the court in which they were pronounced.
A further question remains. Did the county judge err, in the decision of any question of law, arising upon the proceedings under review?
The 24th section of the statute under which they were commenced, provides, "that if it shall appear, upon the hearing before "the officer, that the insolvent, in contemplation of his becoming *Page 322 
"insolvent, or of his petitioning for a discharge, or knowing"of his insolvency, shall have made any assignment, c. of any "of his property, with a view to give a preference to any creditor, "he shall not be entitled to a discharge."
In January, 1845, the defendant executed an assignment of all his real and personal property to trustees, for the benefit of his creditors, giving preference to a very large amount, to certain individuals therein mentioned. Prior to the assignment, judgments had been obtained against the defendant to an amount exceeding $50,000, on some of which executions had been issued, and levied upon his property. All these facts appear upon the assignment, which was read in evidence upon the hearing.
The leading object of these proceedings by the insolvent, was to obtain a discharge from debts, existing at the time of the assignment, and which remained unsatisfied after the disposition of the trust property.
The question is, whether the assignment itself is conclusive evidence of the knowledge of the defendant, that he was at the time insolvent; or that it was executed in contemplation of insolvency, according to the provisions of the sections above quoted.
Insolvency, under the English bankrupt laws, exists when the trader is not in a condition to pay his debts, in the usual and ordinary course of business, although his estate may ultimately prove sufficient to discharge them. (Shone v. Lucas, 3 Dowl. Ryland, 218.) Under a statute of the United States, giving a preference to the goverment in certain cases, insolvency signifies the situation of a person who has done some notorious act to divest himself of all his property; as a general assignment, or an application for relief under an insolvent law. (Bouvier's L. Dict, tit. Insolvent, and cases there cited. 1Peters, 438.) Whatever definition we adopt, a general assignment, according to the spirit of this statute, must be conclusive, both as to the fact of insolvency, and the intent of the debtor.
The design to create a trust of this character, embracing all his estate, is evidence of a belief upon the part of the debtor, *Page 323 
of a present inability to pay bis debts, or of an intent to defraud his creditors. (Van Nest v. Gow, 1 Sand. Ch. R. 8.)
The execution of such an assignment is of itself an act of insolvency of the most unequivocal character. The debtor thereby voluntarily divests himself of all means of payment, and renders it impossible that his creditors at large should obtain satisfaction of their demands, by due course of law. He and they must await the winding up of the trust. If the defendant is chargeable with the necessary consequences of his own acts, when he made up his mind to assign all his property, he contemplated
insolvency; when he consummated his purpose, he became insolvent in fact. The statute looks to equality among creditors, in the distribution of the insolvent's estate. The debtor may disregard this salutary principle. He may notwithstanding give preferences. But in the language of the revisers, in their note to this section, "he must make them with "the assent of creditors, or at the hazard of losing the benefit "of the law." The doctrine evidently deducible from the statute is, that a debtor who creates a trust of all his property, in behalf of creditors, giving preference, can never claim a discharge from any debt, existing when the trust was constituted. It is a legal bar, established by the statute, to the relief claimed by the insolvent. This has been disregarded, by the learned judge before whom these proceedings were instituted. He must have decided, not only that the assignment, as a bar, was not conclusive, but that it was not prima facie evidence, against the defendant. There is nothing in the statement made by the insolvent, on his examination, or in the other testimony, to impair in the slightest degree the effect of the assignment as presumptive evidence. He states, on his cross-examination by his counsel, in addition to the facts appearing on the trust deed, that he made the assignment to preserve his property from being sacrificed; that he did not assign in contemplation of insolvency; that he believed he had property, more than enough at an honest valuation to pay his debts; that he believed he should be able to make anarrangement by which all his debts could *Page 324 
be paid. He therefore admits, not only that he could not pay his debts in the ordinary course of business, but that his property, if applied as the law would apply it, was insufficient for that purpose; that to prevent this he assigned; that he did not contemplate insolvency, because if his creditors would receive property, at an honest valuation, instead of money, to which they were entitled; and his assignees, instead of converting the trust funds into cash, which he had made it their duty to do, would suffer him to make an arrangement with them, all his debts might be paid.
It is therefore the ordinary case of a debtor swearing to an inference of law, when every fact disclosed by him contradicts his conclusion.
I think, for the reasons suggested, that the judge erred in deciding "that the insolvent had in all things conformed to the "matters required of him by the statute," and "that he should "be disharged from his debts." First, because the assignment abovementioned was conclusive evidence that it was executed by the defendant in contemplation of insolvency: or, if not conclusive, then Secondly, that it was at least presumptive evidence of that fact. That these were questions of law, arising upon facts undisputed, each of which, if raised in an action at law, by a demurrer to the evidence, should have been determined in favor of the opposing creditors.
The judgment of the supreme court should be reversed, and that of the commissioner also, and the proceedings declared null and void.