The People of the State of New York, Plaintiff, v. The Mercantile Credit Guarantee Company of New York, Defendant.

In the Matter of the Claims of the Winsted Hosiery Company et al., Appellants.

John M. Bowers, as Receiver of the Mercantile Credit Guarantee Company of New York, Respondent.

1. Insurance — Construction of Credit Policy — General Assignments. Written transfers, by which debtors convey substantially all their property to pay or secure debts, the property being at once delivered and the debtors thereupon at once ceasing to do business, constitute general assignments for creditors within the meaning of a policy prepared for use, not in any particular state or locality, but throughout the country generally, insuring against loss on sales sustained by the insolvency of debtors who have made a general assignment for the benefit of their creditors, whether the assignment be in the form prescribed by state statutes or an assignment at common law, or for the benefit of a single creditor or all.

2. Return of Unsatisfied Execution after Expiration of Policy. Failure to return an execution until three days after the expiration of a credit insurance policy will not relieve the insurer from liability upon the claim upon which it is based under a provision in the policy limiting liability to cases where "an execution has been returned unsatisfied on a judgment obtained * * * for merchandise sold to said debtor during the period covered by this policy," where the other requirements are complied with and the only applicable requirement as to returning the execution is the implied one that it shall be before the expiration of the time fixed for presenting final verified proofs of loss, which is done.

·People v. Mercantile Credit Guarantee Co., 55 App. Div. 594, reversed.

(Argued February 27, 1901; decided April 16, 1901.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, made December 7, 1900, which affirmed an order of Special Term confirming the report of a referee upon the trial of certain contested claims against the defendant.

The following questions were certified :

1. Did either of the three instruments Getz, Moses and Robie set out in the referee's report constitute a general

assignment within the meaning of the policy of the Winsted Hosiery Company, when at the time of their respective executions the property severally described therein constituted substantially all of the property of the respective debtors, and was at once delivered, and the respective debtors thereupon at once ceased to do business?

2. Did the return of the execution unsatisfied against the Crescent Leather Co. on May 3d, 1897, constitute it an insolvent debtor for whom the Mercantile Credit Guarantee Company was liable under the terms of the Daniel Forbes policy?

The facts, so far as material, are stated in the opinion.

*Raphael J. Moses* and *James A. Whyte* for appellants. The term "insolvency of debtors," wherever used in the bond, is understood to be general assignments of or attachment against insolvent debtors or executions in favor of the indemnified returned unsatisfied. (*Goodman* v. *M. C. G. Co.*, 17 App. Div. 478; *Monroe* v. *Douglass*, 5 N. Y. 452; *Latham* v. *de Loiselle*, 3 App. Div. 527; *Am. C. I. Co.* v. *Wimpfheimer*, 14 App. Div. 498; *Mercantile Credit Co.* v. *Wood*, 35 U. S. App. 387.) These several instruments were general assignments, as in each case the proof showed that the specific property embraced substantially all, and was immediately delivered and the debtor ceased then to do business. (*Denn* v. *Lull*, 17 Vt. 390; *Brown* v. *Guthrie*, 110 N. Y. 435; *Delaney* v. *Valentine*, 154 N. Y. 692; *Manning* v. *Beck*, 129 N. Y. 1; *C. N. Bank* v. *Seligman*, 138 N. Y. 435, 445; *Maass* v. *Falk*, 146 N. Y. 34; Burrill on Assign. [6th ed.] 123, § 86; *U. S.* v. *Clark*, 1 Paine, 629; 2 Am. & Eng. Ency. of Law, 56; *Jaeckel* v. *Am. C. I. Co.*, 34 App. Div. 565; *Tebbett* v. *Guarantee Co.*, 73 Fed. Rep. 96; *Fietsam* v. *Hay*, 122 Ill. 293.) These contracts of indemnity are merely contracts of insurance, carefully framed, to limit as narrowly as possible the liability of the insurer, and doubtful expressions in them are to be construed favorably to the insured. (*Supreme Council* v. *F. & C. Co.*, 22 U. S. App. 439; *Guarantee Co.*

v. *M. S. B. & T. Co.*, 47 U. S. App. 91; *A. C. I. Co.* v. *A. W. Mills*, 34 C. C. A. 161–166; *Allen* v. *St. Louis Ins. Co.*, 85 N. Y. 475; *Wallace* v. *G.-A. Ins. Co.*, 41 Fed. Rep. 742; *Wadsworth* v. *J. & T. Co.*, 132 N. Y. 540; *Tebbett* v. *M. C. Co.*, 19 C. C. App. 281; *Green Bay & M. C. Co.* v. *Hewitt*, 55 Wis. 96; *Hartuny* v. *Witte*, 59 Wis. 285; *Williams* v. *Hathaway* L. R. [6 Ch. Div.] 544.)

*Courtland V. Anable* for respondent.    Each of the instruments referred to in the question was a mere chattel mortgage by a debtor not appearing to be insolvent of certain specific chattels therein described to secure the payment of certain specific debts therein enumerated. (*Goodman* v. *M. C. G. Co.*, 17 App. Div. 478; *Tiemeyer* v. *Turnquist*, 85 N. Y. 516; *Knapp* v. *McGowan*, 96 N. Y. 75; *R. W. Co.* v. *Fielding*, 101 N. Y. 504; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Dodge* v. *McKechnie*, 156 N. Y. 514.)    The Crescent Leather Mills Supply Company became insolvent, within the definition of that term contained in the policy, by the return of the execution unsatisfied on May 3, 1897, and as that insolvency occurred after the expiration of the policy no loss by reason thereof was provable thereunder. (*Talcott* v. *Nat. C. Ins. Co.*, 9 App. Div. 433.)

O'Brien, J.   The defendant, as its name indicates, was incorporated for the purpose of making contracts of insurance or indemnity with traders and others to protect them from loss in their business by reason of the failure or insolvency of their customers.   It seems that the company itself failed and passed into the hands of a receiver and two of the parties who had been insured under its contracts presented claims to the receiver as creditors.   The receiver rejected the claims, and upon a trial of the questions before a referee there was a report that the claims were not covered by the contract or policy of the company.   The report was confirmed and judgment against the claimants entered accordingly, which has been affirmed at the Appellate Division by a divided court.

There is no dispute about the facts since they were found by the referee and appear in the record and are embraced in the questions certified to us by the court below. The question before this court involves a construction of the policy or contract which the company delivered to the claimants and which the latter insist entitle them to payment from the assets in the hands of the receiver. It will be convenient to consider the two claims separately, since the policies and the conditions governing the rights of the parties are different. The claim of the Winsted Hosiery Company amounts to $364.24, made up of three distinct items or debts due the claimant from three different customers for goods sold, namely, one Getz, $101.70; one Moses, $176.14, and Robie & Co., $86.40. The two former debtors are in Texas and the latter in Illinois. By the terms of the policy the defendant in consideration of $90 insured the hosiery company " to an amount not exceeding three thousand dollars against loss sustained by reason of the insolvency of debtors owing the insured for merchandise usually dealt in, sold and delivered in the regular course of business." The policy contains numerous conditions and stipulations which qualify the general obligation of the insurer, but we are now concerned with only one of those conditions, which was as follows : " The term 'loss sustained by the insolvency of debtors' is agreed to mean losses upon sales made by the insured to debtors who have made a general assignment for the benefit of their creditors." The question, therefore, is whether, upon the facts found, the three debtors named, to whom the insured sold goods and who failed, made a general assignment for the benefit of their creditors within the fair meaning of this provision of the defendant's policy. They did make written transfers, respectively, of substantially all their property to pay or secure debts, and the question certified is whether either of the three instruments appearing in the record constitute a general assignment within the meaning of the policy " when, at the time of their respective. execution, the property severally described therein constituted substantially all the property of the respective debtors and

was at once delivered and the respective debtors thereupon at once ceased to do business."

Before proceeding to answer the question, it would seem to be necessary to inquire with respect to the scope, purpose and meaning of the policy under which the claim is made. It should be interpreted in such a way as to accomplish the general purpose in view and at the same time give effect to all the conditions according to their fair and reasonable meaning. It would be very difficult, indeed, for any business man to determine the effect of all the conditions that appear in the policy in question, but not very difficult to ascertain what the claimants had the right to understand by the condition that we are now concerned with. The purpose was to indemnify the claimants from loss by insolvency of such debtors as had made a general assignment for the benefit of creditors. The claimants have sustained the loss since an assignment has been made. The assignment or transfer in each case was for the benefit of creditors or a creditor, and it is general in the sense that it embraced substantially all the property that the debtor had. The assignee in each case went into possession and the assignor ceased to do business. The debtor owing the claimant thereby lost the title, possession and dominion over all he had, and thereby became disabled to pay any one else. It would seem to be reasonable in such a case to conclude that the claimant had sustained a loss by reason of the insolvency of a debtor who had made a general assignment within the fair meaning of the policy.

The contract in question was prepared by the defendant and intended for use, not in any particular state or locality, but throughout the country generally. The local law of any state with respect to its construction is not to govern. Each state may have laws and statutes of its own that govern general assignments for the benefit of creditors, but these terms are not used in the policy in question in any statutory or local sense. When the defendant indemnified against insolvency of debtors who had made a general assignment for the benefit of creditors, the contract is not to be interpreted technically, but

the language must be held to mean what the words import to the commercial world. Hence, the character of the instrument or the nature of the transaction must be determined by the effect it has upon the debtor in the business community, and not by the name which the parties see fit to give to it. It may be a statutory assignment, a mortgage, a confession of judgment or some other contrivance, the purpose and effect of which is to dispose of all the debtor's assets and disable him from paying his debts. In such cases the loss is fairly within the scope of the indemnity secured to the insured by this policy. It is the completeness of the transfer and its effect upon the debtor in business, and not the name or form of the instrument or transaction, that gives it character. Any transfer by a trader or merchant of all his stock and business, when it covers substantially all his property, may be an assignment within the meaning of the policy in spite of its form or the name given to it. (*Brown* v. *Guthrie*, 110 N. Y. 441; *Britton* v. *Lorenz*, 45 N. Y. 51; *Dana* v. *Lull*, 17 Vt. 390; *Kendall* v. *Bishop*, 76 Mich. 634; *White* v. *Cotzhausen*, 129 U. S. 329.) In case of ambiguity or uncertainty concerning the meaning of conditions in contracts of this character, that meaning is to be adopted which is most favorable to the assured. (*Allen* v. *St. Louis Ins. Co.*, 85 N. Y. 473.) That rule is justly applicable to the words used in the policy in question when there is nothing to show that they were used in any narrow, special or local sense. We think, therefore, that the three instruments described in the question certified were general assignments within the meaning of the policy. This proposition will be made clearer by a brief reference to each of the instruments. The transfer by Getz, one of the debtors of the claimant, was made on the 20th day of April, 1896, in Texas. On its face it assigns and transfers to a trustee named all his stock of goods, including fixtures and furniture of all kinds in his store, in trust for the benefit of creditors. The trustee is directed to sell the property and after deducting the expenses of executing the trust to distribute the proceeds among a list of creditors named. The instrument is duly

acknowledged and recorded. If we were disposed to hold, as we are not, that the general assignment referred to in the policy is the statutory assignment for the benefit of creditors known to the laws of this state, it would be difficult to show wherein this instrument is in any substantial sense defective. The instrument made by Moses in the same state bears date October 18, 1896, and is in the same form substantially. It assigns to a person named all his stock, fixtures and store furniture in trust for the benefit of a long schedule of creditors named, with directions to sell and distribute. The trust was accepted by the trustee and the instrument is acknowledged and recorded. At the close of the instrument, however, is the statement that it is "intended as a mortgage." This statement does not change the character of the transaction in the least. To hold otherwise would be to sacrifice substance to mere names and words. It could not very well be a mortgage in any legal or proper sense. The assignor did not owe the assignee any debt and, consequently, the latter could not well be a mortgagee in the ordinary sense. If it was a mortgage at all it was a trust mortgage; that is, for the benefit of creditors, and I am unable to perceive any difference between that kind of a trust and any other.

The third instrument, made by Mrs. Robie in the state of Illinois on the 22d of December, 1896, is undoubtedly in form a chattel mortgage, but it does not follow that it is not also a general assignment within the meaning of the policy. It conveyed to a person named all the stock of merchandise in the store in the broadest terms, including fixtures, furniture, dynamos, lamps and even the horse, wagon and harness used in the business. This was stated to be as security for over $30,000 in notes bearing even date with the mortgage, all payable in different sums at different times, but all within six months with the usual unsafe clause. We have also the fact stated in the question that the assignor or mortgagor gave up the possession and went out of business, and that the transfer covered substantially all of her property. This transaction is none the less a general assignment within the meaning of the

policy, because it was made to take the form of a mortgage.
The transfer was general, since it covered all the assignor had.
The fact that it was for the benefit of one creditor instead of
all, only adds to the completeness of the insolvency. It had
all the effect upon the debtor and her creditors that a general
assignment for the benefit of creditors in the strictest statu-
tory sense could have, and so we think it is a general assign-
ment within the fair meaning of the policy. It follows that
the claims of the hosiery company, which have been described,
should have been allowed. A general assignment within the
meaning of the policy may be for the benefit of a single
creditor or all. It may be in the form prescribed by state
statutes or an assignment at the common law. The form of
the transaction is not so material as the result when it operates
to divest the debtor of substantially his entire property and
closes out his business. Such a transfer means insolvency
within the fair scope of the indemnity. (*Royer Wheel Co.* v.
*Fielding*, 101 N. Y. 504; *Tiemeyer* v. *Turnquist*, 85 N. Y.
516; *Knapp* v. *McGowan*, 96 N. Y. 75; *Vanderpoel* v. *Gor-
man*, 140 N. Y. 563.)

The other claim was presented by the Daniel Forbes Co. of
Chicago under a different policy, involving the meaning of
other conditions. The general purpose expressed is the same
as in the policy just considered, and it expired on the 30th of
April, 1897. The claim was rejected on the ground that it
had not accrued within the life of the policy. It amounts to
$441.97 for goods sold to an insolvent debtor, and it is claimed
that the following conditions of the policy exclude it from
sharing in the assets held by the receiver: (1) "Only such
amounts as are actually owing by an insolvent debtor to the
insured at *the date of his insolvency* shall be taken into the
calculation of losses under this policy and only when the said
debtor has made a general assignment for the benefit of his
creditors, or has been declared insolvent in legal or judicial
proceedings, or an execution has been returned unsatisfied on
a judgment obtained against him by the insured, or some
other creditor, for merchandise sold to said debtor during the

period covered by this policy, provided said execution has not been returned after the appointment of a receiver or trustee of the property of the debtor." (2) "This policy shall expire on the 30th of April, 1897, and any loss by reason of the insolvency of any debtor after said time shall not be provable hereunder." (3) "Final verified proofs of loss must be presented to the company within sixty days after the expiration of the policy, and no loss is payable unless included in such proofs submitted within that period. Losses to be adjusted and paid within sixty days after final proofs."

The claimants' debt was for goods sold and judgment was recovered thereon and execution issued twelve days before the policy expired, but the execution was not returned unsatisfied till three days after, that is on May 3d, 1897, and the question certified to us is: "Did the return of the execution unsatisfied * * * on May 3, 1897, constitute it an insolvent debtor, for which the * * * company was liable under the terms of the Daniel Forbes policy?" I think that this claim is fairly within the indemnity provided by the policy.

(1) The conditions require that the judgment be obtained "for merchandise sold to said debtor *during the period covered by this policy*." That condition is satisfied by the facts of this case.

(2) Any *loss* by reason of the *insolvency* of the debtor after the expiration of the policy is not provable. That means that the loss and the insolvency must occur within the year covered by the policy. Both facts did occur within that time in this case.

(3) There is no express limitation in the policy with respect to the time when the execution is to be returned, except that it must not be returned "after the appointment of a receiver or trustee of the property of the debtor." That did not happen in this case.

(4) The only limitation in the policy concerning the return of the execution is implied in the condition that final verified proofs of loss must be presented within sixty days after the policy expires, and no loss is payable unless included in such

proofs submitted within that time. It may be possible that unless the execution is returned within the sixty days limited for presenting final proofs that the insured will not be able to make proof of his claim. But in this case the return was made within three days after the policy expired, so that the insured could and did present the claim in his proofs. To sustain the decision under review it is necessary to hold that not only must the goods be sold within the life of the policy and the judgment rendered and execution issued, but that it must be returned unsatisfied within that time, which is one year, and that too when there is no language in the policy or in the conditions which would warrant such construction. It would reverse the legal rule for the interpretation of such conditions, and require us to hold that they are not to be construed liberally in favor of the insured, but strictly against him, by importing into the contract words that the parties have not used. The return of the execution does not constitute the main fact of insolvency, but is simply evidence of that fact, and if the insured, when presenting his proofs of loss within the time stipulated, can show that it has then been returned, that is a compliance with the terms of the policy. (*Sloman* v. *Mercantile Credit Guarantee Co.*, 112 Mich. 258.) The contention that the goods must be sold, judgment recovered, execution issued and returned unsatisfied, all within the year, would defeat in most cases every purpose of the insured in entering into the contract and destroy all benefits to be derived by him under it. The sheriff in this state has sixty days within which to return the process, and perhaps in other states even a longer time, and if the insurer can be held only on such judgments and executions as have been returned unsatisfied within the year when the goods are sold, the indemnity to the insured is a delusion. It is very clear that no such construction should be adopted unless the language employed admits of no other. When the conditions of this policy are carefully read it will be seen that such an extreme and destructive stipulation is not to be found. No language has been employed to limit the liability of the insurer to debts upon which an execution

has been returned unsatisfied *within the year*, and that proposition comprehends the whole question. Such a limitation cannot be based upon conditions that are obscure or of doubtful meaning. ( *Wadsworth* v. *Jewelers & Tradesmen's Co.*, 132 N. Y. 540.)

I cannot perceive that the case of *Talcott* v. *National Credit Ins. Co.* (9 App. Div. 433), affirmed in this court without opinion (163 N. Y. 577), has any bearing upon the questions now before us. That action was against another company upon a very different instrument. That case turned upon a condition in the contract to the effect that the insurer should not be liable for any losses of which it did not receive notice during the life of the policy. The present appeal involves no such question. What must be found in the present policy in order to sustain the decision below is a plain condition that the insurer will not be liable for any losses unless an execution is returned unsatisfied before the date of the expiration of the policy. No such condition can be found in the instrument. The condition is that the insurer is not to be liable for any loss not included in proofs of loss to be presented within sixty days after the policy expires.

Our conclusion, therefore, is that the claims presented to the referee and here discussed should have been allowed, the questions certified should be answered in the affirmative, the order of the Appellate Division and the Special Term should be reversed, with costs, and the case remanded to the Special Term for a further hearing.

Parker, Ch. J., Haight, Vann and Landon, JJ., concur; Bartlett and Martin, JJ., concur, except as to the claim of the Forbes Company, as to which they dissent. Execution should be returned within the life of the policy.

Ordered accordingly.