(35 Misc. Rep. 755.)

PEOPLE v. MERCANTILE CREDIT GUARANTY CO. OF NEW YORK. In re CHASE et al. In re SMITH. DANIEL FORBES CO. v. BOWERS. WINSTED HOSIERY CO. v. SAME.

(Supreme Court, Special Term, New York County. September, 1901.)

1. CREDIT INSURANCE POLICY—INSOLVENCY—READJUSTMENT.

Where, during the life of a credit insurance policy, the insurance corporation becomes insolvent, and the policy provides that the loss of the insured shall be adjusted only so far as it exceeds a stated percentage of his gross sales, the minimum for which is fixed at an arbitrary sum, it becomes the minimum of the amount of gross sales at the time of the insolvency of the insurer; and the insured, in proceedings to dissolve the corporation, may be allowed on such a basis a dividend in such proportion as the terms of the policy bore to the time which had elapsed after its issue, and before the insolvency of the insurer.

2. SAME.

A credit insurance policy provided that it should be enforceable by the insured where his debtor makes an assignment, or goes into the hands of a receiver, or offers a compromise. A debtor in the hands of a receiver offered a compromise by giving notes, but the offer was never accepted. The insurer agreed that any loss on the notes should be readjusted on maturity of the last note, under a clause providing that, where a debtor's offer of settlement has been deducted out of the adjustment, and the insured does not subsequently realize the amount of the offer, the loss shall be readjusted, and the deficiency ascertained, within 12 months after the expiration of the policy. The policy expired in 1897. The deficiency was not ascertainable until 1899. *Held*, that the adjustment under such clause would be denied, as the offer to compromise was never carried out.

3. SAME—PAYMENT ON DEBTS.

A credit insurance policy provided that in estimating the loss of the insured on a debt due him from an insolvent the "securities" of the debtor held at the time of the appointment of a receiver, taken at their actual value, and other assets, taken at the value as shown by his books, less 25 per cent., shall be deemed a payment to the extent of such value on account of the debt owing to him. *Held*, that neither the lands of the debtor nor mortgages on them are securities of such debtor.

4. INSOLVENT CORPORATIONS—ALLOWANCE OF CLAIMS—PROCEDURE.

Where, in proceedings to dissolve a corporation, claims of creditors are rejected, but are subsequently allowed by the court of appeals, and are sent back for further hearing, the proper practice of the creditors is to enter orders establishing their claims against the funds in the hands of the receiver of the corporation.

**5. Costs.**
    Where an order of the court of appeals reverses orders of the lower
courts with costs, such orders cover costs in the court of appeals only.

Action by the people against the Mercantile Credit Guaranty
Company. In the matter of the claims of Chase, Merritt & Co.
and other creditors. Motion for judgment on remittitur by cer-
tain creditors. Report modified.

See 67 N. Y. Supp. 447, and 68 N. Y. Supp. 1145.

Nicoll, Anable & Lindsay, for receiver.
Raphael J. Moses, for claimants.

GIEGERICH, J. The defendant corporation, engaged in the
business of credit insurance, issued its policies of insurance against
loss sustained by reason of the insolvency of debtors to whom the
insured had extended credit for goods sold in the usual course of
business. The present proceedings, in the action brought for dis-
solution of the corporation, involve the validity and amount of
claims presented by certain policy holders against assets in the
hands of the receiver, and, by the exceptions taken, the conclu-
sions of the referee are assailed in some particulars in behalf of
the receiver, and in others in behalf of the claimants. It has been
contended for the receiver that these policies are invalid if tested
by the law of Massachusetts, and that they are to be treated as
contracts made or to be performed within that state; hence that
they are unenforceable as the basis of claims in this action. Upon
this point the reasoning of the learned referee, favoring the view
that their contracts were made and to be performed in this state,
is found to be persuasive. The intention of the parties was clearly
to make a contract under conditions which would render it valid in
each instance, it being apparent from the transactions that the
form of a Massachusetts contract was sought to be avoided, and
that the parties actually knew of the state of the law. The authori-
ties cited by the referee sustain the conclusion that the contracts
may, as matter of law, be treated as contracts made and to be per-
formed within the state of New York, and I find no necessity for
further discussion of the point.

The exceptions of the claimant Chase, Merritt & Co. bring in
question the accuracy of the finding as to the amount of its claims
under the policy, the dispute being as to the proper effect to be
given to a provision of a policy whereby the loss was to be ad-
justed only so far as it exceeded a stated percentage of the gross
sales made by the insured, the minimum of the gross sales being
fixed at an arbitrary sum for the purposes of the computation.
Owing to the insolvency of the company within the period of in-
surance, and the consequent impossibility of performance of the
contract for the full period, it would be manifestly inequitable to
measure the rights of the insured as upon this arbitrary amount
of "gross sales," which was fixed with a view to sales made during
the full term of the policy. There is no dispute that the referee
properly refused to take this total arbitrary amount as represent-
ing the gross sales for the purpose of computing the loss as deter-

mined over the agreed percentage of gross sales, and the question is whether the method adopted by him for an equitable adjustment of the loss, with a view to the business of the insured up to the time of the failure of the insurance company, is the proper method. Since the insured was to be indemnified only so far as his losses exceeded a certain percentage of his gross sales, and the failure of the company had brought the matter to a close, leaving the rights of the insured to be adjusted as of the date of the failure, there is naturally some uncertainty whether the gross sales (for the purpose of computation) could fairly be measured by the actual sales to that date, for it might be that the sales afterwards would have been in increased or lessened proportion, and the loss payable to the insured would have been correspondingly affected. I am inclined to agree with the referee that the "gross sales" may best be taken by resorting to the agreed minimum of such sales as expressed in the policy, and accepting the fraction of that amount afforded by the proportion of time during which the policy was in life, taken in relation to the full term of the policy. There is possibly some doubt whether the insured's opportunities for trade were equal from day to day, but the fairest adjustment would seem to be that taken on the basis of the agreed minimum sales,— a basis which the parties presumably took to be representative of the business conditions under which the insurance was effected,— and no method is suggested which would result in better equity, so far as I have been able to find.

Passing to the claim of W. H. H. Smith & Co., the dispute as to the amount of loss payable under the policy turns upon the extent to which the insured is entitled to indemnity upon a debt of $2,-556.87 due from the Toledo Lumber & Manufacturing Company. It appears that the debtor became insolvent, and a receiver of its assets was appointed. Subsequently a proposal was made looking to the full payment of its debts, in the carrying out of which proposal this creditor was to receive four promissory notes maturing at successive dates. By the terms of the policy it became enforceable where the debtor of the insured had made a general assignment, "or the said debtor, without failing in business, has offered to compromise his debts, and said compromise was first submitted to and approved by this company." The meaning of the term "general assignment" was elsewhere in the policy defined as including a receivership, and the method of adjusting losses where a receiver of the debtor had been appointed was expressly detailed. The contention of the claimant is that the amount of this debt became payable in full as a loss under the policy, without regard to the provisions for the adjustment of losses in the case of an insolvent debtor, and that, in any event, the referee erred in his construction of those provisions, if they were applicable. According to the evidence, this claimant, when notified of the debtor's proposal to give promissory notes in payment of the debt, wrote to the insurance company, stating the offer, and inquiring, "Will you guaranty the payment of any loss on this proposition after the expiration of our policy, under the readjusting clause?" to which the company

answered, "We will, as requested, extend the condition of readjust-
ing clause until November 9, 1899, to cover the maturity of the last
note." The readjusting clause provided:

"When an amount offered in settlement by a debtor has been deducted in
an adjustment of losses under this policy, and thereafter the insured does
not realize from the estate of said debtor, or otherwise, sufficient to pay the
offer or settlement so deducted, said amount shall be readjusted in the same
manner as though such offer or settlement had not been made: provided,
however, that at the time of adjustment of said losses the said offer or set-
tlement was noted in writing on the final proof by this company and the in-
sured; but no such readjustment shall be made unless the estate of such
debtor has been finally closed and settled, and the deficiency ascertained,
within twelve months from the expiration of this policy."

The policy expired March 31, 1897; therefore, without an exten-·
sion, this clause could not have covered a readjustment on the
basis of a deficiency which was not ascertainable until 1899, and
no reason is apparent for giving to the correspondence above quoted
any greater effect than the granting of a request to extend the time
during which this clause was operative. There had been no actual
compromise, and this offer of compromise was at no time used as the
basis of any adjustment of the loss. Had there been an adjustment,
then a readjustment might have followed, but, as the matter stands,
the readjustment clause appears to have nothing to do with the case.
The correspondence did not alter the policy in any way other than as
to the time for readjustment, and, since the offer of compromise was
never accepted nor concluded, and the debtor had failed in business,
the matter was not one for adjustment, as in a case where "the
debtor, without failing in business," had offered a compromise, with
the approval of the company. The loss, therefore, was properly
to be computed in accordance with the provisions of the policy gov-
erning cases of insolvency; and the next question is whether the
referee's method of adjusting the loss is correct. According to
the policy, in estimating the loss sustained by the insured upon a
debt due from an insolvent "the securities of such debtor held by any
one at the time of the appointment of such receiver, taken at their
actual value, and the other assets of such debtor, taken at the value
as shown by his books, * * * less twenty-five per cent., shall
be deemed a payment to the extent of such value on account of the
amount owing to the insured." It appears that certain of the assets
of this debtor, the Toledo Company, consisted of pieces of real estate
upon which were outstanding mortgages, and the contention of the
insured is that these mortgages were "securities" of the debtor with-
in the meaning of the policy. The referee has found that the actual
value of the real estate was in a stated sum considerably below the
value as appearing upon the debtor's books, and, if the actual value
is taken as the basis for computation, the insured would be entitled
to some payment upon the loss, otherwise the finding of the referee
that nothing is due under the policy is to be supported. I think
that the referee is correct in his conclusions that the real estate and
the mortgages thereon should not be classed as "securities of the
debtor." The property of the debtor is divided into two classes,—
"securities" and "other assets,"—and the securities referred to are

evidently such as have the character of assets, for it is only as assets that the "securities" enter into the scheme of computation. In the sense of assets, these mortgages are certainly not "securities of the debtor," and the real estate upon which they are liens, and the title to which is in the debtor, does not partake of the nature of "securities" as the term is naturally understood. For the purposes of the present question, the nature of the real estate, as an asset of the debtor, is the same whether it is incumbered or not,—that is, it is no more of the class of "securities of the debtor," because of the presence or absence of mortgages; and the use of language in the policy, viz. "the securities of such debtor held by any one," etc., would seem to forbid any such construction as would include the debtor's real estate. Indeed, if the real estate were to be classed as "securities," the provisions of the policy relating to "other assets" would be meaningless, for all assets would be equally "securities," in so far as they might be susceptible of employment as security for a debt.

The exceptions of the Cable Rubber Company relate to the referee's deductions of certain items in estimating the loss under the policy, the ground of the deduction being that these items were chattel mortgages (or, in one instance, a trust deed), and not within the policy. It appears to be conceded that these items are of the same nature as those passed upon in the Winsted Hosiery Company's claim, and the exceptions of the Cable Rubber Company must, therefore, be sustained, in accordance with the conclusion lately expressed by the court of appeals that items of this character are within the policy. People v. Mercantile Credit Guarantee Co., 166 N. Y. 416, 60 N. E. 24.

The motions for judgment upon the claims of the Daniel Forbes Company and the Winsted Hosiery Company are opposed upon the ground that the proper practice calls for an order, not a judgment. This I take to be the correct view. The decision of the court of appeals settled the question as to the amount of these claims, and the matter was remanded to the special term for further hearing. As the result of such hearing, the claims are to be allowed, but the form which the direction of the court is to take is necessarily the same as upon the original hearing. The action has not gone to judgment, and claims allowed in the course of these proceedings are payable by the receiver, when so directed, in due course of administration; but this payment is not to be enforced by execution, and the rights of the respective claimants are properly preserved by an order establishing the claims as against the appropriate funds in the receiver's hands.

Upon the question of costs, it appears that the court of appeals reversed the orders of the appellate division and special term "with costs," and this covered costs in the court of appeals only. In re Amsterdam Water Com'rs, 104 N. Y. 677, 10 N. E. 545. The argument for the claimants in support of the propriety of an award to them of costs in all courts has to do with a question which was presumably considered by the court of appeals; but the present application, so far as it relates to costs of earlier steps in the proceedings,

cannot be favorably considered, because beyond the power of the special term. In re Protestant Episcopal Public School, 86 N. Y. 396. The moving parties may have motion costs, but, since their costs in the court of appeals have heretofore been made the subject of a judgment, the orders to be entered can contain no further award of costs.

Exceptions of receiver, Chase, Merritt & Co., and W. H. H. Smith overruled. Exceptions of Cable Rubber Company sustained, and report modified accordingly.

Ordered accordingly.