L. BLACK COMPANY, Respondent, *v.* LONDON GUARANTEE
AND ACCIDENT COMPANY, LIMITED, Appellant.

Insurance (credit) — application for credit insurance — when
erroneous statement as to losses in business constitutes breach of
warranty in statements in application.

Plaintiff took out credit insurance in the defendant company. In
stating what purported to be its losses for the year, it omitted to
state the insolvency of a debtor from whom a considerable sum was
due, plaintiff and other creditors having taken a deed of trust
of all the debtor's property. It appears that such property is
wholly insufficient to pay the debts due plaintiff and the other
creditors, by all of whom the debtor was discharged from further
liability, so that it was evident at the time the application for the
policy was made that plaintiff would sustain a loss on this account,
although the amount may not have been apparent. *Held*, that
the statement in the application as to the "losses" which the appli-
cant had sustained cannot be limited to claims against insolvent
debtors whose estates had been finally settled, and that there was a
loss within the ordinary meaning of that term as used in an appli-
cation for credit insurance such as constituted a breach of warranty
on the part of plaintiff.

*Black Co. v. London Guarantee & Accident Co.*, 159 App. Div.
186, reversed.

(Argued December 2, 1915; decided January 11, 1916.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the fourth judicial department,
entered November 20, 1913, affirming a judgment in
favor of plaintiff entered upon a verdict directed by the
court.

The nature of the action and the facts, so far as
material, are stated in the opinion.

*Louis L. Waters* for appellant.   Under the undisputed
facts plaintiff had, on June 16, 1910, suffered an actual
loss of $9,667.63 through Fred W. Edwards, of Duluth,
Minn., which loss it did not include in its statement of

losses in the application. And this within the ordinary and usual meaning of the word "loss," and within the meaning placed upon the word "loss" by the application itself. (*Meadowcroft v. People*, 163 Ill. 56; *State v. Beach*, 43 N. E. Rep. 949; *People v. M. C. Guarantee Co.*, 166 N. Y. 416; *Conard v. Ins. Co.*, 1 Pet. 438; *Moorehead v. Hollister*, 6 N. Y. 309; *American Credit Indemnity Co. v. Wimpfheimer*, 43 N. Y. Supp. 909; *Goodman v. Mercantile Credit Co.*, 45 N. Y. 408; *Carrolton v. American Credit Indemnity Co.*, 115 Fed. Rep. 77; 124 Fed. Rep. 25.)

*Hiram R. Wood* for respondent. While a warranty must be strictly true, its scope will not be extended beyond its literal terms. (*Dineen v. General Accident Ins. Co.*, 126 App. Div. 167; *Valentine v. Met. Ins. Co.*, 106 App. Div. 487; *Darrow v. Family Fund Ins. Co.*, 116 N. Y. 537.) If a question in the application is not answered at all, or if the answer is not false in any respect but upon its face is incomplete only, there is no breach of warranty provided the insurer accept the application without objection, since, if not satisfied, the insurer should demand fuller information. (Richards on Ins. Law, § 113; *Dilleber v. Home Life Ins. Co.*, 69 N. Y. 256; *Higgins v. Phœnix Mutual Life Ins. Co.*, 74 N. Y. 6; *Whited v. Germania Fire Ins. Co.*, 76 N. Y. 415.)

SEABURY, J. This action is upon a policy of credit insurance. The defense relied upon is breach of warranty. The plaintiff made written application for the policy on June 16th, 1910. In that application it made the following statement as to its losses: "Losses $8,959.05 from July 1st, 1909, to date, showing amount owing as accounts stand to-day." It is conceded that this statement of losses did not include the loss occasioned to the plaintiff by reason of the insolvency of F. W. Edwards

36

of Duluth, Minnesota. The defense of breach of warranty is predicated upon the failure of the plaintiff to include in his statement of losses the loss that resulted upon this account. The amount of the loss which the plaintiff suffered upon this Edwards account was $9,667.63. Five months and thirteen days before the plaintiff signed the application for the policy Edwards made a deed of trust to the plaintiff covering all of his property. This trust deed shows Edwards to have been indebted to the plaintiff and some twenty-four other creditors in an amount in excess of $16,000. The largest part of this amount was due to the plaintiff. The trust deed gave to the plaintiff the right to continue the business of Edwards, to sell his property and to apply the proceeds thereof to the payment of his indebtedness to the plaintiff and to the other creditors. The plaintiff and the other creditors of Edwards accepted the property in payment of their claims and agreed to discharge Edwards from liability. These circumstances disclosed to the plaintiff the fact that a large sum of money was due to it from a debtor who was insolvent and had turned over his property to it. The property transferred was wholly insufficient to pay the debt due the plaintiff and the debts due to the other creditors of Edwards. At the time the plaintiff signed the application for the policy it must have been evident to it that it would sustain a loss upon the Edwards account although at that time the extent of the loss may not have been apparent. The large indebtedness of Edwards to the plaintiff was due, and the plaintiff had released Edwards from liability. Its only opportunity for payment was that it should realize from the administration of the insolvent estate a sum sufficient to pay all the creditors of Edwards. The question is presented whether the Edwards account was a loss within the meaning of the word " losses " as used in the application for the policy. The application and the terms used in it are "not to be interpreted technically, but the language must be held to

mean what the words import to the commercial world."
(*People* v. *Mercantile Credit Guarantee Co.*, 166 N. Y. 416,
420.) The word "losses" as understood in its ordinary
sense when used in an application for credit insurance,
includes, we think, such an account as that of Edwards.
The word "loss" as used in this connection contemplates
the loss which at the time the application is signed the
applicant has sustained without regard to any possibility
that may exist that the applicant will be able to recover
his loss from the administration of the estate of an insol-
vent debtor. The word "losses" in the application does
not refer to "probable loss" or "loss beyond recovery."
It includes such accounts as in the ordinary and usual
course of business a business man would regard as rep-
resenting a loss. In the usual and ordinary course of
business Edwards could not pay his debts and the assign-
ment of his property would as against him be considered
as conclusive evidence of his insolvency. (*Morewood* v.
*Hollister*, 6 N. Y. 309, 322.) It indicated to his creditors
his insolvency and that loss would result to them upon
the accounts due from him to them. (*People* v. *Mer-
cantile Credit Guarantee Co.*, *supra*, page 423.)
The respondent contends that the word "losses"
refers only to the losses which at the time the applica-
tion is signed appear upon the books of the applicant.
Whether or not there was a loss greater than that
which the applicant stated is a question of fact and does
not depend upon whether the entries in the applicant's
books are in accord with the facts. The successful con-
duct of the business of credit insurance necessarily
depends upon the insurer receiving correct informa-
tion from the insured as to his losses. There are we
think few business men who would not regard an account
of an insolvent debtor as representing to some extent a
loss, even though that debtor had made an assignment
of his property for the benefit of his creditors. The state-
ment in the application as to the "losses" which the

applicant had sustained cannot be limited to claims against insolvent debtors whose estates had been finally settled. The assignment by Edwards and the agreement of his creditors including the plaintiff to release him from liability and to look to his property for the *pro rata* payment of their debts was a "loss" within the ordinary meaning of that term as used in an application for credit insurance. It is claimed on behalf of the respondent that the striking out of the printed application before signature of a clause which was designed to permit the applicant to state anything that he knew detrimental to the credit or standing of any customer, brings this case within the rule that a breach of warranty cannot be predicated upon the mere failure to answer a question. The fallacy in this argument lies in the fact that no attempt is made to base the claim 'of breach of warranty upon the failure of the respondent to answer a question but rests entirely upon the fact that the applicant's answer to the question in relation to its losses was not true. While the failure to answer a question will not of itself justify a claim of breach of warranty it does not excuse the making of a false answer. I think that it plainly appears from this record that at the time the plaintiff made the statement as to its losses, which made no reference to the Edwards account, the plaintiff had in fact sustained a loss upon that account. It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDEBACK, CARDOZO and POUND, JJ., concur.

Judgment reversed, etc.