Blank *v.* London Guarantee & Accident Company, Limited, of London, England, Appellant.

Argued October 16, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Frederick H. Spotts,* and with him *Layton M. Schoch,* for appellant.

*Joseph Blank,* for appellee.—The plaintiff's claim was never disputed within the meaning of the law: Appeal of Knight, 19 Pa. 493.

Proof of the execution of a consent to the appointment of a receiver is in effect an assignment for the benefit of creditors: People v. Mercantile Credit Guarantee Co., 166 N. Y. 416.

OPINION BY KELLER, J., January 29, 1930:

The defendant issued its policy of insurance to the plaintiff indemnifying him against loss, not exceeding $5,000, due to the insolvency of debtors occurring between January 1 and December 31, 1924, and resulting from the insured's bona fide sales of leather shipped and delivered during said term.

Plaintiff made claim for three items of loss, filed proofs as required by the policy, and on June 23, 1925, brought this action. Defendant filed an affidavit of defense, which in 87 Pa. Superior Ct. 140, we held to be insufficient as to one account (Penn Shoe & Overgaiter Co.) but sufficient as to the other two (Keystone State Shoe Mfg. Co. and Firtel Bros.).

These items came up for trial before a judge of the municipal court without a jury, who found in favor of the plaintiff as to both accounts. From the judgment entered on the finding defendant has appealed.

1. *Keystone State Shoe Manufacturing Co. Account.*

This account was filed with the defendant for collection, pursuant to condition 2, subdivision (1) of the policy which provides that "The insolvency of a debtor for the purposes of this policy shall be deemed to have occurred when during the term of the policy (1) the insured elects to file with the company for collection an account which under the original terms of sale, is due

and payable at the time of filing, but not over seventy (70) days past due under said terms of sale." It was delivered by defendant to its attorney, who under its authority brought suit before an alderman against the debtor and got judgment by default, for want of an affidavit of defense, for the full amount of the claim. The debtor took an appeal to the court of common pleas which was pending and undetermined when the present action was brought on the policy. Defendant admitted the insolvency of the debtor under the terms of the policy but defended under the following clause relative to adjustment of losses: "If any covered and filed account of the insured against a debtor is disputed in whole or in part, the same shall not be admitted in any adjustment under this policy until after it has been finally determined to be a valid claim against the debtor, at which time such account, so far as covered, shall be adjusted under this policy and the amount due the insured, if any, shall be paid." The policy made provision for interim adjustments, refunds by the insured in case of overpayments to him and refunds by the company to the insured in case the amounts realized by it from salvage exceeded the total amount paid the insured under the policy.

It also provided that no suit or action on the policy should be brought or be sustainable unless commenced within twelve months after its termination, that is, by December 31, 1925.

On that date the suit against Keystone State Shoe Mfg. Co., brought by defendant's attorney, was still pending and undetermined. Judgment for the full amount of claim was, however, finally entered in favor of the plaintiff prior to the trial of the present action in the court below.

The learned judge of the court below found that in the circumstances above stated the account was not contested in good faith, and therefore not 'disputed'

within the meaning of the policy; that the appeal to the common pleas was wholly without merit and had been taken merely for delay. Whether this be sustainable under the facts in evidence or not, we are of opinion that the finding against the defendant on this item was warranted. In the peculiar circumstances of this case, and in view of the particular provisions of the policy we think it sufficient to sustain a recovery if the claim is not disputed at the time the verdict of the jury or finding of the judge is entered—and that is established here beyond question.

The policy bars any suit upon it after one year from the end of the term. It places the collection of claims filed with the defendant under condition 2, subdivision (1) of the policy and the conduct of suits brought to enforce such collection, wholly in the hands and under the control of the defendant. To hold that suit could not be brought on the policy while action on the 'insolvent' account was pending would put it in the power of the defendant to escape liability under its policy by delaying action on the disputed claim. The policy does not so provide. The insolvency of the debtor and liability to pay the correct amount due is admitted; the controversy as to this sum, which forms the basis of adjustment, can be settled after suit brought just as well as before. The policy requires proofs to be filed with the defendant within a stated period on all claims made against it. It contemplates preliminary adjustments and a final adjustment; but provides that claims on accounts filed with the defendant for collection under condition 2, subdivision (1), such as this, shall not be considered prior to final adjustment, unless the debtor has become insolvent under subdivisions (2) to (14). The clause relied on by the defendant to defeat recovery under this item of claim only provides that it shall not be admitted in any adjustment under the policy until after it has been finally determined to be

a valid claim against the debtor, "at which time such account, as far as covered, shall be adjusted under this policy and the amount due the insured if any shall be paid." The account was finally determined to be a valid claim against the Keystone State Shoe Mfg. Co., prior to the trial in the court below, and the plaintiff is therefore entitled to be paid the amount due on it under the policy. This is in accord with what was said in 87 Pa. Superior Ct. 140, 142, where in referring to the same item we said: "If a bona fide dispute as to the amount due plaintiff by his debtors exist, as averred, the loss is not yet payable." We did not say that if such dispute existed, the action was, as to it, prematurely brought, or could not be sustained.

2. *Firtel Bros. Account.*

There is no doubt of the actual insolvency of Firtel Bros. on December 31, 1924, whether the term be used in the popular or legal sense. The controversy in the court below seems to have been whether the facts in evidence brought such insolvency within any of the fourteen instances of the term specified in the policy. An involuntary petition in bankruptcy was prepared, signed and sworn to by three of Firtel Bros.' creditors, whose claims aggregated over $1,000 in amount, on December 31, 1924. On the same day the attorney for Firtel Bros. executed a paper consenting to the appointment of a receiver for the alleged bankrupts in said proceedings. The papers were not actually filed nor the receiver appointed until January 2, 1925. The bankruptcy and appointment of the receiver were not contested by Firtel Bros.

Among the acts which the policy declares shall be deemed to be insolvency for the purposes of the policy (Condition 2) are: "When during the term of this policy ...... (2) A petition in bankruptcy or insolvency is filed by or against a debtor under the laws of the United States or any State or Territory thereof,

or of Canada; ...... (4) A receiver is appointed for a debtor; ...... (11) A debtor makes an assignment, or a deed of trust, for the benefit of his creditors, either general or with preferences.''

The learned court below, on the authority of People v. Mercantile Credit Guarantee Co., 166 N. Y. 416, 60 N. E. 24, held that the signing and delivery by the debtor's attorney of the paper consenting to the appointment of a receiver, amounted in effect to an assignment for the benefit of creditors, adopting the language of Mr. Justice O'BRIEN in that case: ''Any transaction by a trader or merchant of all his stock and business, when it covers substantially all his property, may be an assignment within the meaning of the policy in spite of its form or the name given to it.'' But in that case the debtors ''did make written transfers of substantially all their property to pay or secure debts.''

We do not feel that we are obliged to rest a recovery on that finding, even though it may be correct.

The fourteen subdivisions under Condition 2 declaring when insolvency shall be deemed to have occurred for the purposes of the policy do not restrict or narrow the usual or ordinary meaning of insolvency, but extend and enlarge it. Under them, in addition to the three causes just above mentioned, insolvency is deemed to have occurred, for the purposes of the policy, when during the term of the policy (1) the insured elects to file an account with the company for collection, as previously mentioned; ...... (3) A debtor makes an offer of a general compromise to his creditors for less than his indebtedness; ...... (5) A sole debtor dies or becomes insane; (6) There is a recording of or taking possession under a chattel mortgage given by a debtor of his stock in trade to a creditor or creditors; (7) An attachment or execution is levied on a debtor's stock in trade; (8) A writ of execution against a debtor

is returned unsatisfied; (9) A debtor transfers or sells out his stock in trade in bulk; (10) A debtor absconds; ...... (12) The stock in trade of a debtor is sold under a writ of attachment or execution; (13) A confession of judgment is made by a debtor; (14) A debtor's business is assigned to or taken over by a committee appointed by a majority in number and amount of his creditors.

It is apparent that some of these acts would not be included within the ordinary meaning of 'insolvency.' Their enumeration cannot be held to narrow or limit its meaning, or prevent a recovery where insolvency unquestionably occurred during the term of the policy: Strouse v. American Credit Indemnity Co., 91 Md. 244, 46 Atl. 328.

As there was no dispute that Firtel Bros. were insolvent on December 31, 1924, even though the petition in bankruptcy prepared on that date was not filed until January 2, 1925, the lower court was justified in finding in favor of the plaintiff on this item, and entering judgment on the finding.

The judgment is affirmed.