Jacob Paskusz et al., as Copartners Composing the Firm
of J. Paskusz & Son, Appellants, *v.* The Philadelphia
Casualty Company, Respondent.

Insurance — construction of provisions in policy for credit
insurance.

Ambiguous phrases in a policy for credit insurance construed in
accordance with the rule that insurance contracts must be given
the meaning most favorable to the insured, that they should be clear
and explicit in their terms, should not be couched in language as to
the construction of which lawyers and courts may honestly differ,
but should be so plain and unambiguous that men of average intel-
ligence who invest in these contracts may know and understand
their meaning and import. (*Janneck* v. *Met. Life Ins. Co.*, 162 N. Y.
574, 577, followed.)

*Paskusz* v. *Philadelphia Casualty Co.*, 146 App. Div. 763, reversed.

(Submitted October 16, 1914; decided November 10, 1914.)

Appeal from a judgment, entered November 11, 1911,
upon an order of the Appellate Division of the Supreme
Court in the first judicial department, reversing a judg-
ment in favor of plaintiffs entered upon a decision of the
court at a Trial Term without a jury and directing a
dismissal of the complaint.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Jacob Scholer* for appellants. The trial court correctly
found that the policy sued on in this action insured the
plaintiffs on the "experience" basis for losses sustained
through the extension of credits to Annie Scheinberg, an
"old" customer. (*Roome* v. *Phillips*, 24 N. Y. 463;
*People* v. *Frudenberg*, 209 N. Y. 218; *Roe* v. *Vingut*, 117
N. Y. 204; *People* v. *Van Rensselaer*, 8 Barb. 189; *Hope*
v. *Clifden*, 6 Ves. 499; *People* v. *M. C. G. Co.*, 166 N. Y.
416; *Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 307; *Gillet*
v. *Bank of America*, 160 N. Y. 549.)

*Frank H. Platt* and *Livingston Platt* for respondent. Annie Scheinberg, during the period covered by the policy, was an "old" customer, having a rating not included in the list of ratings included in Schedule A, and was rated only as to credit and not as to capital. Consequently, plaintiffs' loss on the Annie Scheinberg account was not covered by the bond. (*Robertson* v. *U. S. C. S. Co.*, 57 N. J. L. 12.)

Cardozo, J. The plaintiffs are the holders of a policy of credit insurance issued by the defendant. The policy provides that the class of customers to be covered by its protection, and the limit of credit to be given to each of them, shall be described in an annexed schedule. The schedule distinguishes between old customers and new. The former are those to whom the indemnified has shipped goods within eighteen months before the shipment of the first item included in the account upon which loss has been incurred. The latter are those to whom he has shipped no goods within eighteen months, or to whom he has never sold any goods. Customers, whether old or new, are covered by the policy if they possess one of the capital and credit ratings specified in the following schedule:

"R. G. Dun & Company's Mercantile Agency.

| First Grade. | | Second Grade. | |
| --- | --- | --- | --- |
| Aa– | A 1 | Aa– | 1 |
| A + | A 1 | A + | 1 |
| A – | A 1 | A – | 1 |
| B + | 1 | B + | 1½ |
| B – | 1 | B – | 1½ |
| C + | 1 | C + | 1½ |
| C – | 1½ | C – | 2 |
| D + | 1½ | D + | 2 |
| D – | 1½ | D – | 2 |
| E – | 2 | E – | 2½ |
| F – | 2½ | F – | 3 |
| G – | 3 | G – | 3½ " |

A key to these ratings issued by the mercantile agency, but forming no part of the policy, shows that the first column is intended to represent a capital rating and the second a credit rating. Thus, in the symbol "G — 3," the letter "G" indicates a capital rating of from $5,000 to $10,000, and the figure "3" a credit rating described as good.

We have said that all customers, old or new, possessing one of these capital and credit ratings, are covered by the policy. Old customers, however, are covered under certain conditions though they fail to comply with these requirements. The conditions are stated in the policy as follows:

"TT — Subject to the terms and conditions of the attached Bond, and this rider, old customers of the Indemnified possessing a capital and credit rating other than as specified in the above schedule, or who are rated entirely blank as to both capital and credit, or whose names are not printed in the designated Mercantile Agency Book, shall be covered for goods shipped during the term of the attached Bond."

During the term of the policy the plaintiffs made sales to an old customer whose rating in the mercantile agency was designated by the symbol " — 4," the capital column being blank. The sales resulted in a loss; and the question is whether the loss is covered by the policy. The plaintiffs say that the rating " — 4" is a capital and credit rating other than as specified in the schedule, and hence that subdivision TT sanctions a recovery. The defendant says that " — 4" is not a capital and credit rating other than as specified in the schedule, but only a credit rating; and that although a recovery would be permitted if both columns were blank, it is not permitted where only one of them is blank. The trial court held with the plaintiffs. The Appellate Division reversed the judgment, and held with the defendant.

In our view, the exclusion of this loss is based upon a construction of the policy unduly strict and literal.   A customer may fairly be said to have "a capital and credit rating other than as specified in the above schedule" though one element of the rating is a blank or a cipher. Whether the phrase quoted is to be given that meaning must depend largely on the context.   The argument adverse to such a construction is that a blank rating cannot properly be spoken of as a rating at all.   The very next clause of the policy supplies the answer.   It speaks of customers "who are *rated* entirely blank as to both capital and credit."   A rating that is blank is, therefore, still conceived of as a rating, and is so characterized in the contract.   There is nothing strained or unusual in such a use of words.   A man's capital may be rated by the use of a cipher as truly as by the use of any other symbol.   The value may be something or nothing; the symbol may be positive or negative; but in either event, within the sense of this clause, it constitutes a rating.   There are not two schedules, one for capital and one for credit; but both elements, capital and credit, are fused into a single schedule; and whatever the value given to each element distributively, the resultant is described collectively as a capital and credit rating.

It is urged, however, that even if a blank rating may be deemed a rating for some purposes, the provision that the policy shall cover customers "who are rated entirely blank as to *both* capital and credit" evinces an intent to exclude customers who are rated blank as to only one of those elements.   We think another inference may more justly be drawn.   If both columns were blank, it might plausibly be said that there was no rating at all, and not merely a different one from those specified in the schedule. To guard against a construction that would exclude losses under those conditions the provision was inserted that even if both columns were blank the loss would be covered.   The purpose was not restriction but enlarge-

ment. In providing that the losses should include sales to customers "possessing a capital and credit rating other than as specified in the above schedule," the policy had already made adequate provision for cases where there was a blank in one column only. To make the classification complete, all that remained was to cover cases where there was no rating of any kind, and this accordingly was done.

In the construction of this contract we must give to ambiguous phrases the meaning most favorable to the insured. (*People* v. *Mercantile Credit Guarantee Co.*, 166 N. Y. 416, 421.) We think there is an ambiguity here, and we resolve it in favor of the plaintiffs. We are confirmed in this conclusion when we consider that the construction urged by the defendant would make the scheme of the policy unreasonable. In that view, if both columns contained the worst possible rating, the loss would be covered. If neither column contained any rating, the loss would be covered. If the customer was unknown, and not mentioned in the mercantile agency book at all, the loss would be covered. And yet if the rating as to credit was A1, the highest known, but the capital column was blank, the loss would not be covered. We cannot believe that a merchant accepting this policy was required to give such a construction to its obscure phrases. We apply to this case the language of Judge Werner, writing for this court, in *Janneck* v. *Met. Life Ins. Co.* (162 N. Y. 574, 577): "Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import." Applying that test to this case, we think the plaintiffs must prevail.

The judgment of the Appellate Division should be

reversed, and that of the Trial Term affirmed, with costs to the appellants in all courts.

WERNER, HISCOCK, COLLIN, HOGAN and MILLER, JJ., concur; CHASE, J., dissents on opinion of SCOTT, J., below.

Judgment reversed, etc.