NATHAN CHODOROW, Plaintiff, *v.* BERKSHIRE MUTUAL FIRE INSURANCE Co., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, July 7, 1943.

# ERRATUM

## VOLUME 186 MISCELLANEOUS REPORTS

Page 704, vol. 186 Misc. as printed in the bound volume is the temporary page as first published in the Advance Sheets. Complete the blank space at the bottom of page 704 by attaching the additional matter below:

---

FEDERAL DEPOSIT INSURANCE CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27970.)

Court of Claims, May 16, 1946.

State — Court of Claims — refund of unemployment tax — claim on implied contract for such refund dismissed since claim not filed within six months after accrual.

A claim, filed in October, 1945, on implied contract for refund of payments made by a State bank to the Unemployment Insurance Fund in October, 1939, and January, 1940, must be dismissed on the authority of *Guaranty Trust Co. of N. Y.* v. *State of New York* (186 Misc. 676) [because the claim was not filed within six months after the claim accrued].

MOTION to dismiss claim.

*Nathaniel L. Goldstein, Attorney-General* (*Donald S. Glenn* of counsel), for defendant.

*Earle C. Bastow* for claimant.

RYAN, J. Claimant, as assignee of the First Citizens Bank and Trust Company of Utica sues the State on an implied contract for money had and received to recover the sum of $3,134.48 paid by it to the Unemployment Insurance Fund on October 14, 1939, and on January 15, 1940. On May 2, 1945, the claimant demanded a refund of such payments and this demand was

*Milton Kean* for plaintiff.

*Abraham J. Goldberg* for defendant.

WATSON, J. The parties have submitted their controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act and section 124 of the New York City Municipal Court Code (L. 1915, ch. 279).

The action is based on a general property floater policy of insurance issued by defendant to plaintiff insuring him, as bailee of his customers' clothing, against certain risks or perils in respect thereto occurring in the course of operation of his laundry business.

As permitted by the policy, it was plaintiff's custom to deliver to an outside laundry clothing belonging to his customers for processing. For brevity that laundry hereinafter will be referred to as processor. On or about December 16, 1941, the processor with its truck called for and received from plaintiff at his place of business, customers' shirts for the purpose of having them processed. The truck was owned, operated and controlled solely by the processor. While the shirts were in transit on that vehicle the truck was broken into and certain of the shirts were stolen and carried away by unknown persons. There were visible signs of forcible entry. The local police authorities were

notified promptly of the occurrence. Plaintiff thereafter made due proof of the loss and otherwise duly met the requirements of all of the other provisions of the policy that were required of him thereunder. Rejection of his claim resulted in the commencement of this action which, concededly, was brought within the time prescribed by the policy after the happening of the loss. Defendant disclaims liability on the ground that at the time the loss occurred the goods were in course of transportation on a truck owned and operated by a private carrier which is a type of conveyance without the class of carriers set forth in clause " 9 " of the policy relating to risks insured against and, therefore, defendant claims that plaintiff's loss is not within the confines of the policy.

The relevant portions of the contract of insurance are: " Covering on all kinds of lawful goods and/or articles accepted by the Assured for laundering, being the property of its customers, while contained in the premises occupied by the Assured * * * or while in the custody of its agents and also while being transported in actual physical custody of the Assured to and from its customers or agents, *and also while such goods and/or articles are in the possession of outside agencies, such as steam laundries, etc. against loss or damage caused by the perils specifically insured against* * * *.

" 9. TRANSPORTATION risks by Public Carriers, Assured's own trucks, conveyances and messengers." (Emphasis supplied.)

One of the perils insured against, as shown by the foregoing excerpts from the policy, is loss of the goods while they are in possession of outside agencies. The policy reveals no requirement that the goods must be physically within or upon the premises of outside agencies in order to constitute possession by those agencies when loss or damage occurs, to bring the loss or damage within the coverage of the policy. Nor is there any statement contained in the policy from which an inference to such effect may be drawn. In the first paragraph of the quoted clauses of the policy it is observed that, except as to risks relating to custody of the goods by agents of the assured, or while the goods are in transit, or while they are in the possession of outside agencies, the loss or damage must occur while the goods are " contained in the premises " of the assured in order to bring the event within the compass of the risks insured against. Omission from the policy of such a limitation upon possession of the goods by outside agencies evinces an intention of the parties that those agencies are exempt from restriction of that nature. When, therefore, the shirts were delivered to and

received by the processor at plaintiff's premises and were there placed in the truck of the processor for the purpose of processing, they were, under those circumstances, in possession of an outside agency within the meaning of the policy and the intention of the parties, notwithstanding the fact that they never reached their destination. In that situation the means of conveyance was not that of a private carrier since the policy did not prohibit the use by outside agencies of their own trucks or conveyances in obtaining possession of and transporting the goods from the premises of the assured. Only in instances where the conveyance is owned and operated independently of the assured, or of a public carrier or of outside agencies, is loss or damage of the goods in transit excluded from the risks outlined in the policy.

The intention of the parties, expressed or fairly to be inferred, is the guide in determining the reasonable expectation and purpose of ordinary businessmen when making an ordinary business contract (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47; *Finery Silk Stocking Co., Inc.*, v. *Ætna Insurance Co.*, 227 App. Div. 39, 42). "Every part of the contract should be considered in arriving at an interpretation thereof, and no part of the words of a policy should be rejected as insensible, or inoperative, if a rational and intelligible meaning can be given them, consistent with the general design and object of the whole contract. * * * Not only should every part of a policy be considered, but such a construction, should, if possible, be put upon the contract as will harmonize and give effect to all its provisions." (2 Cooley's Briefs on Insurance, pp. 963–964).

The statement by the court in *Zivitz* v. *Maryland Casualty Co.* (192 App. Div. 83, 87) is pertinent here. "Under the well-settled rule of construction applicable to policies of insurance, prepared by the insurance companies, the policy must not be so construed to work a forfeiture unless by clear and unambiguous language, readily understandable, not by judicial officers or trained experienced members of the bar, but by business men of average intelligence who have occasion to require such insurance, it appears that it was so intended." (Citing *Paskusz* v. *Philadelphia Casualty Co.*, 213 N. Y. 22.) This rule of construction of insurance policies is enunciated in a long line of cases; among them are the cases of *Kean* v. *National Surety Co.* (241 N. Y. 252) and *Auerbach* v. *Maryland Casualty Co.* (236 N. Y. 247).

The decision of the court in *Finery Silk Stocking Co., Inc.*, v. *Ætna Insurance Co.* (227 App. Div. 39, *supra*) is not authority

for the proposition urged by defendant that plaintiff's loss is not covered by the policy of insurance. In that case coverage was limited strictly to the hazards of transportation, which hazards were confined to (1) loss occurring while the merchandise is in due course of transportation by common carriers continuously from the time the goods or merchandise leaves the factory at initial point of shipment until delivered at but not in factory, store or warehouse at destination, (2) or while on assured's trucks when deliveries are made to connecting common carriers at nearest freight, express or steamship office, and by rider provision extended to include (3) conveyance of goods on trucks of motor transportation companies. The policy did not include loss or damage to the goods while contained in premises of the assured or while in possession of outside agencies. The plaintiff there conceded that the property was not in the custody of a common carrier, or in one of the assured's own trucks for delivery to a connecting common carrier at the nearest convenient freight, express or steamship office at the time of the loss, but contended that the loss was within the coverage of the rider attached to the policy for the reason that the truck upon which the goods were being then conveyed was a truck operated by a motor transportation company, a class of carriers embraced in the rider, extending the risks assumed by the defendant. The court held (p. 42) that "The truck in question from which the theft was made was not a truck of a motor transportation company, as provided for in the rider attached to the policy." It was used in connection with the principal business of its owner merely to transport goods which the owner contemplated dyeing or which it had already dyed back and forth from and to its customers.

Other cases cited by defendant need not be referred to since the terms of the policy and the facts of each of those cases are quite dissimilar to those that are present in this action.

Plaintiff is entitled to the relief demanded in the complaint.