## LEE v. ÆTNA CASUALTY & SURETY CO.
### No. 79, Docket 21445.

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1949.

Decided Dec. 29, 1949.

Benjamin H. Siff, New York City, H. L. Kanner, New York City, for plaintiff.

Daniel Miner, New York. City, for defendant.

Before L. HAND, Chief Judge, and. SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

Both parties appeal from a summary judgment in an action upon a policy of liability insurance. The complaint was in two counts, of which the judgment dismissed the first, and granted the relief demanded in the second. Judge Ryan's opinion in the district court[1] states the posi-

1. Lee v. Aetna Casualty & Surety Co., D.C., 81 F.Supp. 1008.

tions of the parties and the relevant facts, completely and accurately, and we shall not repeat them, but will proceed at once to the discussion of the legal questions involved. The validity of the first count depends upon whether the insured, the Trefflich Pet Shop, Inc., had "become obligated to pay by reason of the liability imposed upon him (*sic*) because of the hazards defined in the Special Provisions" of the policy. The "Special Provisions" declared that the hazards included "bodily injury * * * caused by accident * * * arising out of (a) the ownership * * * or use of the Premises or the conduct of the business * * * carried on at the Premises," and (b) "the ownership * * * or use of the elevators described in the Declarations." Item three of the "Declarations" was a "Description of Elevators," and it was left blank except that under the caption, "Number of elevators" was written the word "None." The eighth item of the policy was entitled "Exclusions," and provided that "this insurance does not apply" to nine kinds of liability, separately lettered, of which the fourth, (d), was "to the ownership, maintenance or use of any elevator, unless described herein." The defendant was therefore liable to the insured —and to the plaintiff under the New York Insurance Law [2]—only in case the liability of the insured did not arise out of the "use" by the insured of an elevator. The plaintiff wished to buy a monkey; and monkeys were kept on the fifth floor. In order to take the plaintiff thither, the president of the insured led him to the door of an elevator, opened it, slid up a protecting gate, and beckoned the plaintiff to step in, which he did and fell to the bottom of the shaft. Was that a "use" of the elevator by the insured? We agree that in Marcus v. United States Casualty Company [3] the "exclusion" was broader; it read: "bodily injuries sustained by reason of any elevator." A customer might well be injured "by reason of" an elevator which the insured had not "used," especially as the word, "elevator," was defined to include the "shaft or hoistway." For example, he might fall down a shaft, the door of which had been carelessly left open; his injuries would not then have arisen out of the insured's "use" of the elevator in his dealing with the customer; and to that the exclusion should be confined. On the other hand, unless the insured's invitation to the plaintiff to step into the elevator was a "use" of it, that word must be limited to occasions in which the insured in some way physically manipulated some part of it. Even so, the insured's president opened the door which led to the shaft and pushed up the vertically sliding gate; and the term "elevator," as used in the policy, like the same term in Marcus' case, supra, included "the shaft, hoistway, or other appliances or parts thereof." However, we do not wish to limit "use" to occasions in which the insured manually operates some "part" of the elevator. As always, the language is to be interpreted by its purpose, and the purpose was to exclude liabilities occasioned by the insured's availing itself of an elevator for the purpose of its business. One "uses" a thing when one "makes use" of it, and it would be absurd to say that a shopkeeper does not "make use" of an elevator shaft, when he invites a customer to step into it, so that he might be lifted to that part of the shop where the goods are kept which the customer wishes to buy. The judgment was clearly right which dismissed the first count.

The validity of the second count depends upon the meaning of the defendant's promise to "defend * * * any suit against the Insured alleging injury, sickness, disease or destruction covered by this Policy * * * even if such suit is groundless, false or fraudulent." This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered."

2. Consol.Laws, c. 28, § 167, sub. 1 (b).

3. 249 N.Y. 21, 162 N.E. 571, 572.

752

The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is "groundless." That was the decision of the New York Court of Appeals[4] in a case where the promise was to "defend * * * any suit against the insured alleging such injury * * * even if such suit is groundless, false or fraudulent"—language which is for all practical purposes identical with that in the policy at bar. On the other hand, in that case the policy required that the injury should have "occurred before the completion of the actual course of the operations performed by the insured"; and the complaint in the action, which the insurer refused to defend, had alleged that the injury had happened "on or about April 13," and that the work had not been completed "until after April 13th." Thus the complaint did expressly allege facts which put the asserted liability within the terms of the policy. That was not true in the case at bar, for the complaint covered an injury which might, or might not, have happened from the insured's "use" of the elevator; thus Goldberg v. Lumber Mutual Casualty Insurance Company, supra,[5] does not answer the defendant's objection, which can be stated with much plausibility, as follows. The insurer's undertaking is to defend only those suits "alleging injury * * * covered by the Policy," and the insured—on whom the burden rests of proving a breach—does not prove that the suit against him "alleged" such an injury, when the allegations admit recovery upon a liability not covered. The insured must at least proceed in the defence of the suit, until it appears that the liability, on which the injured party is relying, is in fact covered, and not merely that it might be.

There is no answer to the logical cogency of this reasoning, because to allege that an injury happened in one of several ways, is not to allege that it happened in any one of the ways. In the case at bar it did not matter to the plaintiff whether he was injured by the insured's "use" of the elevator or by falling into an unguarded shaft; but, since in the first event the policy would not cover the ensuing liability, and since the allegation did not declare which of the two had happened, it did not declare that the injury was within the policy. However, any complaint, though its language may cover two or more events, is meant to advise the defendant of only one event, unless two separate events create separate liabilities. The "intended" event is that on which the injured party means to rely; and, although he has not made it plain whether it is within the class of events covered by the policy, it either is or is not within that class. His allegation leaves its membership in that class open, but the class of the event he is talking about is definitely fixed.

Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases—the case at bar was one—it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defence of a claim which it turns out the insurer has promised to pay. We do not believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay. The only exception we can think of is that the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not hap-

---

4. Goldberg v. Lumber Mutual Casualty Insurance Co., 297 N.Y. 148, 77 N.E.2d 131, 132.

5. 297 N.Y. 148, 77 N.E.2d 131.

pen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. Finally, if there be an ambiguity in the language of the policy, since the choice is between imposing the burden of the defence upon the insurer or the insured, the canon contra proferentem must prevail, especially as the case involves construing an insurance policy.[6] Indeed, the question is probably foreclosed for us anyway by the decision of the New York City Court in Pow-Ell Plumbing & Heating, Inc. v. Merchants Mutual Casualty Co.,[7] which is on all fours with the case at bar.

It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover. This it did not do; it relied upon the complaint alone, and that did not limit the plaintiff's recovery to an injury arising from the insured's "use" of an elevator. The Tenth Article did allege that "through the negligence" of the insured the plaintiff was "caused to fall * * * to the pit of the shaft"; and the Twelfth Article alleged that the insured had allowed the "premises occupied" by it to become dangerous, had "invited" the plaintiff into a place of danger, and had "so carelessly operated and maintained the aforementioned premises so (sic) as to render them unsafe and dangerous." But all this is quite consistent with the insured's liability for a breach of its duty towards a "business guest," who had entered the ground floor, and fallen into the pit because the shaft was open and unguarded. Such a recovery the policy would have covered, and the defendant was bound to defend the suit as it stood. Since all the facts, including the damages, were conceded, the judgment was right upon the second count, as well as upon the first.

Judgment affirmed.

6. Janneck v. Metropolitan Life Insurance Co., 162 N.Y. 574, 577, 57 N.E. 182; People v. Mercantile Credit Guarantee Co., 166 N.Y. 416, 421, 60 N.E. 24; Paskusz v. Philadelphia Casualty Co., 213 N.Y. 22, 26, 106 N.E. 749, Ann.Cas. 1915A, 652; Silverstein v. Commercial Casualty Ins. Co., 237 N.Y. 391, 143 N.E. 231, 35 A.L.R. 32.

7. 195 Misc. 251, 89 N.Y.S.2d 469.