# Eastcoast Equipment Company v. Maryland Casualty Company

*Harry N. Ball*, for plaintiff.

*Lynn L. Detweiler*, for defendant.

SLOANE, P. J., BARBIERI and SPAETH, JJ., July 1, 1965. — Plaintiff, Eastcoast Equipment Co. (hereinafter "Eastcoast"), the insured, under a policy of insurance (herein "policy"), seeks recovery of counsel fees and costs incurred in the defense of two personal injury actions where defendant, Maryland Casualty Company (hereinafter "Maryland"), the insurer, refused to defend the actions.

Maryland admits the policy, that it was in full force and effect, and that Eastcoast's counsel fees and costs in the amount of $5,197.22 are reasonable, but Mary-

land contends its refusal to defend was proper, in that the allegations against Eastcoast in the prior actions were not covered by any provision of Eastcoast's policy with Maryland.

Eastcoast was cleared of any liability when the two prior actions were settled. Therefore, Eastcoast's claim is solely for the costs of defense,[1] and not for any damages it was forced to pay.

Sitting as a trial judge without a jury, I considered the pleadings, which include the policy and the pleadings of the two prior actions where Eastcoast was a defendant,[2] and decided that as a matter of law (the determination of this case depends only on a question of law [3]), Maryland was obligated to defend the prior actions and, therefore, Maryland is liable to Eastcoast for Eastcoast's costs of defense. These findings were upheld by a court en banc, sitting on exceptions filed by Maryland.

## I.

The insurance policy is entitled "Comprehensive General Liability Policy". Two coverages are provided:

"Coverage A. Bodily Injury Liability—to pay on behalf of the insured all sums which the insured shall

---

[1] Eastcoast's complaint also requested legal interest; no interest was included in the amount of the verdict. Cf. Penneys v. Pennsylvania Railroad Company, 408 Pa. 276 (1962). Eastcoast filed no exceptions to the verdict, and presumably has dropped its demand for interest.

[2] To determine whether the complaint against the insured stated a claim within the policy, that complaint is necessarily a part of the pleadings in this case: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582 (1959); Wilson v. Maryland Casualty Company, 377 Pa. 588 (1954).

[3] Where the burden of proof is a relevant factor in proving an exception or exclusion from an insurance policy, it is an affirmative defense on the insurer: Sykes v. Nationwide Mutual Insurance Company, 413 Pa. 640 (1964); Weissman v. Prashker, 405 Pa. 226 (1961); Armon v. Aetna Casualty and Surety Company, 369 Pa. 465 (1952).

become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"Coverage B. Property Damage Liability . . ."

The policy also provides:

"Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the Company shall:

"(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient".

The policy carried an endorsement which excluded "Products Hazard". In the definitional section of this policy, "Products Hazard" is defined as follows:

1. " . . . goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured. . .

2. ". . . operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; . . ."

The personal injury action, in which Eastcoast was one of the defendants, were instituted in two Superior Courts of the State of New Jersey.[4]

---

[4] One in Monmouth County (Elvin Jones, plaintiff), the other

The two plaintiffs in the New Jersey actions were injured when a crane cable broke and a boom dropped and struck them. These plaintiffs sued the manufacturer, distributor (Eastcoast), and purchaser of the crane, who leased it to plaintiff's employer, and the manufacturer of the cable. Eastcoast's liability was averred that as the distributor and agent of the manufacturer of the crane, it had breached warranties of quality and safe use. A second count alleged that Eastcoast was negligent in recommending for use in the operation of the crane the cable that broke, as it was unsafe and improper for use with the crane.

Maryland concedes it is immaterial whether the averments in the prior actions were true or false. It contends it was not obligated to defend the action against Eastcoast, because the liability of Eastcoast was predicated upon a "Products Hazard", which had been excluded from the policy.

The first clause of the "Products Hazard" definition, quoted above, relating to goods or products manufactured excludes Maryland's obligation to defend, since the accident occurred after possession of the product had been relinquished, and because the accident occurred away from the premises of Eastcoast.

The problem in this case arises from the second clause of the "Products Hazard" definition, "Operations". Eastcoast contends that since the second count

in Hudson County (Braulio DeOliveira, plaintiff). The particular language used in the Jones complaint (second count para. 3), alleged Eastcoast's negligence "in recommending for use on the said unit, a cable, for boom hoist cable reeving, which these defendants knew, or in the exercise of reasonable care should have known, was, under the circumstances, unsuited, unsafe and improper for such use and purpose; in negligently and carelessly assuring, explicitly or implicitly . . . that the same was fit and suited for expressed purposes in the construction business. . . ." Similar language was used in the DeOliveira complaint.

of both complaints alleged negligent representations, and because these representations are operations, the representations continued while being relied upon by the user of the crane and cable. Therefore, Eastcoast claims, the representation was not completed, and the exclusion of "Products Hazard—Operations" is not applicable; Eastcoast's liability is still covered by the policy, and Maryland must defend.

## II.

Judge Learned Hand's opinion in Lee v. Aetna Casualty & Surety Co., 178 F. 2d 750 (2d Cir., 1949), is the leading exposition on the duty of an insurer to defend an action against its insured. Because Hand is so lucid, he deserves to be quoted at length:

"The validity of the second count depends upon the meaning of the defendant's promise to 'defend . . . any suit against the Insured alleging injury, sickness, disease or destruction covered by this Policy . . . even if such suit is groundless, false or fraudulent.' This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; . . . .

"Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases—the case at bar was one—it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defense of a claim which it turns out the insurer has promised to pay. We do not

believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay. The only exception we can think of is that the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defense. When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. Finally, if there be an ambiguity in the language of the policy, since the choice is between imposing the burden of the defense upon the insurer or the insured, the canon contra proferentem must prevail, especially as the case involves construing an insurance policy. . . .

"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, until it could confine the claim to a recovery that the policy did not cover": 178 F. 2d at 750, 751-53.

Pennsylvania[5] follows Aetna: Wilson v. Maryland

---

[5] Maryland's brief before the court en banc states: "[T]he policy was issued and delivered in Pennsylvania". Thus, although Eastcoast is a New Jersey corporation and Maryland operates under the laws of the various States, the "place of contracting", (Restatement, Conflict of Laws §311 (1934) ) would seem to be Pennsylvania, and thus Pennsylvania law applies: Varas v. Crown Life Insurance Company, 204 Pa. Superior Ct. 176, 183 (1964). Of course, the choice of law in this case centers on the insurance policy

Casualty Company, 377 Pa. 588 (1954) ; Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582 (1959) ; Casper v. American Guarantee & Liability Insurance Company, 408 Pa. 426 (1962) ; Gedeon v. State Farm Mutual Insurance Company, 410 Pa. 55 (1963). These decisions clearly establish that it is the "nature of the claim" which controls the insurer's duty to defend.

Of these cases, only Cadwallader held in favor of the insured against its insurer, where the latter refused to defend. However, the duty to defend under the particular type of insurance coverage at bar here ("Products Hazard") has apparently not been passed upon in Pennsylvania. Therefore, the aforementioned cases are valuable only to set the scene and to characterize the question: was the nature of the claim against Eastcoast one which may potentially come within the coverage of the policy? [6] To determine this question, the

---

and not the accident, which occurred in New Jersey involving New Jersey plaintiffs and a New Jersey corporation. See note, Products Liability and the Choice of Law, 78, Harv. L. Rev. 1452 (1965). Restatement 2d, Conflict of Laws, §§332, 334(e), (Tent. Draft ♯6, 1960), suggests construction of a contract according to the state with which the contract has its most significant relationship. Pennsylvania's contacts here are minimal, and it is possible that Maryland would be in a better position under New Jersey law. See Note 6, infra. However, Maryland has argued Pennsylvania law to the court en banc, and also there is no indication that Pennsylvania has abandoned "place of contracting" as the relevant incident for choice of law, even though "place of the wrong" has been abandoned in the tort field: Griffith v. United Air Lines Inc., 416 Pa. 1 (1964).

[6] Aetna involved two claims against the insurer, to pay the judgment recovered against the insured, and to pay the costs of defense. Although allowing the second claim, the court held that the insurer was not obligated to pay the judgment, as the recovery was not one within the coverage of the policy. This would indicate a dichotomy between the insured's rights to defense and indemnity, imposing a higher duty on the insurer for the former. See 7A Appleman, Insurance, §§4683, 4684 (1962). Cf. Dawek v. Hommer,

decisions of courts which have construed similar policy provisions should be consulted.

## III.

Reed Roller Bit Co. v. Pacific Employers Ins. Co., 198 F. 2d 1 (5th Cir., 1952), cert. den. 344 U. S. 920 (1953), is most squarely on point. The insured (Reed Roller) was sued when an abrasive wheel manufactured by another company disintegrated while being

---

28 N. J. Super. 68, 100 A. 2d 198, affirmed, per curiam, 15 N. J. 573, 105 A. 2d 677 (1953), and Ebert v. Balter, 83 N. J. Super. 545, 200 A. 2d 532 (1964), (insurer's duty to defend ordinarily correlative with its duty to pay judgments obtained against the insured) with Zeitz v. Zurich General Accident & Liability Insurance Ltd., 165 Pa. Superior Ct. 295 (1949), ("The insurer does not have the option of deciding whether or not an action, proper and sufficient upon its face, imposes upon it a liability to pay and make its obligation to defend dependent thereon", at page 301).

Gedeon v. State Farm Mutual Automobile Insurance Company, 410 Pa. 55 (1963), indicates that Pennsylvania does not follow a "correlative" rule: "[T]here may be an obligation to defend although no obligation to indemnify": 410 Pa. at 58-9. Clauss v. American Automobile and Insurance Company, 175 F. Supp. 641 (E. D. Pa., 1959), and Brunner v. McCullough, 216 F. Supp. 496 (E. D. Pa., 1963), support this view of the Pennsylvania law. But cf. Federal Insurance Company v. Michigan Mutual Liability Company, 277 F. 2d 442 (3d Cir., 1960), which characterized Pennsylvania law on the duty to defend as in a state of indecision, but without a full examination of the cases. Imposing a greater duty to defend than to indemnify is apparently a minority view: Liberty Mutual Insurance Company v. Hercules Powder Company, 126 F. Supp. 943 (D. Del., 1954) (dicta), revised 224 F. 2d 293 (3d Cir., 1955).

It is possible in Pennsylvania for the insurer to defend without admitting coverage: Laroche v. Farm Bureau Mutual Automobile Insurance Company, 335 Pa. 478 (1939), Gedeon v. State Farm Mutual Automobile Insurance Company, supra. New Jersey appears contra: Ebert v. Balter, supra. Since Eastcoast was excused from any liability, there is no indemnification claim against Maryland, and thus only Maryland's duty to defend should be considered. However, the dichotomy of responsibility placed on the insurer in Pennsylvania indicates the high obligation to defend.

used on a grinding machine manufactured by Reed Roller. The complaint against Reed Roller charged that one of the latter's salesman recommended the particular abrasive wheel for use on the Reed Roller machine, and that this was a negligent representation. The court held that the district court was in error in granting the insurer's motion for judgment on the pleadings, and remanded the cause for trial.

Although the theory of the insured's liability in Reed Roller was based on a "premises—operations" hazard, the insurer claimed nonliability on the basis of an exclusion of "completed operations", and the rationale of the fifth circuit is applicable here:

"[N]o person could be injured as a result of acting upon a negligent representation until after the representation had been made to him. We hold that an operation consisting of a negligent representation made for the purpose of or reasonably calculated to induce action is not completed until the person to whom the representation is made acts in reliance upon that representation": 198 F. 2d at page 3.

Waterman Steamship Corporation v. Snow and General Accident Fire and Life Assurance Corporation, Ltd., 222 F. Supp. 892 (1963), affirmed, 331 F. 2d 852, on opinion of lower court, one judge dissenting, 9th Cir., 1964, held that where the insured, a fumigator, had sprayed the hold of a vessel, and 14 hours afterwards issued a certificate representing that the hold was safe for human occupancy, the insured was not covered for the initial spraying, because it was a completed operation and excluded from policy coverage, but the insured was covered for the representation that the hold was safe, as that was a new operation, and coverage was not precluded because of a "completed operations" exclusion:

"Neither the language of the policy, nor the definition of 'products hazard' requires or persuasively sug-

gests, that this negligent action [the representation by the insured] was intended to be excluded from coverage": 222 F. Supp. at page 900.

These two cases, Reed Roller and Waterman Steamship, are particularly helpful, because they are concerned with representations by the insured, rather than physical acts upon goods or products. The usual connotations associated with the word "operations" implies the latter, but does not preclude an act of representation from being an operation.[7] In trying to construe a word, the language of Mr. Justice Holmes, contemplating "income" in Towne v. Eisner, 245 U. S. 418, 425 (1918) comes to mind:

---

[7] Eastcoast asserts that since the definitional clause, supra, page 4, mentions "such operations", this must be a reference to the preceding paragraph, "goods or products manufactured . . .", and because the negligence of Eastcoast was not averred to be in relation to the handling of a product, a representation is not an "operation" as the term is used and thus not excluded from coverage. This argument is contradictory to Eastcoast's main contention that the representation was an operation but not completed, and furthermore assigns too much importance to the adjective "such" and too little thrust to the inclusion of "distributed by" in paragraph (1) of the definition. The term "operations" must be related to product liability (McNally v. American States Insurance Company, 308 F. 2d 438 (6th Cir., 1962), but "distributed by" would seem to be a sufficient nexus. This can be further inducted from the origin of products liability: MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050 (1916), where Cardozo held a manufacturer liable to the ultimate purchaser of an automobile for negligence in construction.

But, cf. Miller Electric Co. v. Employers' Liability Assurance Corp., 171 So. 2d 40 (Fla. App., 1965), holding that the completed operations clause referred only to products, and thus negligence averred against an insured in contracting work was covered, despite an exclusion of completed operations, because contracting work was not part of the products hazard, of which completed operations was a part. Accord: New Amsterdam Casualty Co. v. Addison, 169 So. 2d 877. (Fla. App., 1964). The "distributed by" phrase would seem to preclude these cases from being dispositive of the issue now at bar.

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used".

Maryland relies principally upon several cases where the facts revealed operations by the insured in the nature of physical acts, which had been completed, and were, therefore, excluded from coverage by policy clauses similar to the clause in the Eastcoast-Maryland policy.

Tidewater Associated Oil Company v. Northwest Casualty Company, 264 F. 2d 879 (9th Cir., 1959) has been cited by Maryland. The insured's salesman was alleged negligent by a housewife to whom the salesman had delivered a can of stove oil, which had been mixed with gasoline, and subsequently caused an explosion and fire when used by the housewife. The court held, under an exclusion of "products hazard", no duty to defend, because the complaint only alleged an occurrence away from the premises and a completed operation, including the preexisting negligence of the driver. The operation of the driver was a direct handling of a product; there was no allegation of any negligent representations, as in the case at bar.[8]

---

[8] Accord: Smedley Co. v. Employers Mutual Liability Ins. Co., 143 Conn. 510, 123 A. 2d 755 (1956), (no duty to defend where insured warehouse owner allegedly shipped wrong goods, which upon use caused injury, since the accident happened after the shipping operations were completed and away from insured's premises); Bitts v. General Accident Fire and Life Assurance Corporation, 282 F. 2d 542 (9th Cir., 1964), (no duty to defend where insured allegedly failed to warn of the characteristics of a coil, which later exploded when opened, because of a products hazard exclusion for handling or use of products after the insured had relinquished control, no reliance on a "completed operations clause"). See Dillard and Hart, Products Liability; Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145 (1955); U. S. Sanitary Specialties Corp. v. Globe Indemnity Co., 204 F. 2d 774 (7th Cir.,

A recent New Jersey case, Inductotherm Corp. v. N. J. Manufacturers Casualty Ins. Co., 83 N. J. Super. 464, 200 A. 2d 358 (1964), supports Maryland's position, insofar as a failure to warn is equivalent to a negligent representation. The insured manufactured and leased a furnace; crucibles it supplied broke and caused injuries to the lessee's employes. Its negligence was averred as the failure to warn the lessee and its employes of a defect. The products hazard clauses were identical to the policy at bar and excluded from coverage. The court held that since the allegations against the insured concerned its products and completed operations, there was no duty to defend:

"Here, if plaintiff provided, or recommended, or approved, or permitted the use of a shank of inadequate, insufficient or negligent design, in connection with the installation and operation of its furnace, which shank was to be used in conjunction with the crucibles, such recommendations or approval represented acts or failures to act arising out of 'operations', and here the operations had been completed and the accident ocurred away from the premises owned, rented or controlled by plaintiff. It follows, therefore, that such allegations with respect to the shank fall within the product's liability exclusion": 83 N. J. Super. at 474, 200 A. 2d at pages 364-65.

The court establishes, rightly, that the acts alleged were operations, but treats lightly, and without any articulation, the conclusion that they were completed. To the extent that this decision is contra Reed Roller, supra, it seems that the latter is more persuasive. Also, the fact that Pennsylvania places a higher obligation on defense on the insurer than New Jersey, see

1953) (no duty to defend where injury caused by wax negligently placed on floor by demonstrator-salesman and accident occurred 10 days later). See, generally, Hursh, American Law of Products Liability §11: 1, 9 (1961).

note 6, supra, makes adoption of Inductotherm improper.

## IV.

Eastcoast also argues, as insureds are prone to argue when suing their insurers, that the policy, particularly the completed operations clause, is ambiguous. And other courts confronted with the same language have so held.[9]

Words can be baffling, but that does not preclude them from considered judgment and an intelligent interpretation of the English language. Nor does it mean that precise legal analysis should give way to an amorphous cloak, conceptually less taxing, called "ambiguity". Were this case between an individual who purchased the policy through a subway advertisement, e.g., and a giant insurance company, there might be good reason to construe the clauses very strictly, and in case of the slightest doubt, against the insurer.[10] The policy behind this rule is sound; the insurer wrote the policy, and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer.

There would be little purpose in hewing to legal platitudes with no application, where one large corpo-

---

[9] Peerless Ins. Co. v. Clough, 105 N. H. 76, 193 A. 2d 444 (1963); Miller Electric Co. v. Employers' Liability Assurance Corp., 171 So. 2d 40, (Fla. App., 1965); Swillie v. General Motors Corp., 133 So. 2d 813 (La. App., 1961). And the mere fact that intelligent courts have differed on the interpretation of "completed operations" implies some confusion.

[10] An insurance policy is, in general nature, a "contract of adhesion", where the purchaser has no bargaining power, and thus the policy must be construed strictly against the insurer. A famous discussion of this principle is Judge Frank's dissent in Siegelman v. Cunard White Star, 221 F. 2d 189, 199, 204-07 (2d Cir., 1955), involving party choice of law in a steamship ticket.

ration and one large insurance company, both advised by competent legal counsel, do business with each other.[11]

This is not to say that the interpretation of insurance policies should vary according to the sophistication of the purchaser, but only that legal realism demands that the adjudication of disputes arising out of policy language be based upon principles with more than an ephemeral connection to the facts.

## V.

Because the decision in this case can rest on a construction of the "completed operations" clause that holds a representation uncompleted while being relied upon, there is no need to resort to an ambiguity rationale.

A holding to the contrary, that a representation is completed when made, would thoroughly emasculate any real coverage of representations. For they have no value, functionally or temporarily, when spoken, but only when the person to whom the representation is made relies. Although the policy intends to cover only those operations which are presently being conducted, this manifest intention can have no application to an operation such as representations, for there would be, in effect, no coverage. This result can not be allowed.

However, even if a representation is to be considered complete as of the time it is made, still, under the facts of this case, Maryland should have begun to defend Eastcoast.

---

[11] Insofar as the intent of the parties is ascertainable, it should be followed; premiums are paid with certain coverage contemplated. The only indicia of intent in this case is the policy. It was entitled "Comprehensive", but contained an exclusion of "Products Hazard". Thus, we can only presume that Eastcoast thought it was getting broad coverage, but with some limitation because of the exclusion. This observation, however, in no way solves this case. The problem here depends on a legal interpretation of the exclusion clause.

The crane and boom Eastcoast distributed was a complicated piece of machinery. The cable that Eastcoast recommended for use with this crane was possibly of the same complicated nature. Although the complaints against Eastcoast are not specific on this point, the evidence could very possibly have been that the representations of Eastcoast had, in fact, not been completed, but that there would be further instructions and recommendations, included in the broad term representations, on the use of the crane and cable. If these facts were introduced as evidence of uncompleted negligent representations of Eastcoast, then in no sense could the operations of Eastcoast be said to have been completed.[12]

It is conceivable that Maryland did not think of this contingency at the time it was requested to defend, or

[12] To the extent this proof would raise an allegata-probata problem, New Jersey Rules of Civil Procedure would allow an amendment, "leave [to amend by the court] shall be freely given when justice so requires": N. J. Rules Service, §4:15-1. See Pittsburgh Plate Glass Company v. Fidelity and Casualty Company of New York, 281 F. 2d 538 (3d Cir., 1960). In regard to New Jersey practice, see N. J. Rules Service, §4:29 6, for the extensive pretrial procedure allowed. The initial assumption of defense by Maryland might have been advisable, in view of the possibility of settlement at pretrial, which actually did occur, as to Eastcoast. New Jersey follows a "notice-pleading" system, similar to the Federal Rules of Civil Procedure, featuring plasticity of initial pleading, discovery and freedom of amendment. Because of this notice-pleading system, and because the relevant issue on duty of defense is whether the claim can potentially come within coverage, it would seem unwise for the insurer to deny defense at an early posture of the case, as Maryland did in this case. Maryland might be placed in a bind in this instance because of conflicting law in Pennsylvania and New Jersey, and the choice of law problem on interpretation of the policy. See Notes 5 and 6, supra. But since the applicable law on policy interpretation is Pennsylvania's, although framed in the context of New Jersey's Rules of Civil Procedure, Maryland should not have taken so adamant a stand so early in the development of the case.

that it knew that the representations of Eastcoast were definitely completed, and that the users of the cable were "on their own". These possible explanations do not have legal standing and, considering the nature of the insurer's obligation to defend, are insufficient to excuse the performance of that obligation.