805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LEXINGTON INSURANCE CO., Plaintiff-Appellee,
v.
WIDGER CHEMICAL CORPORATION, et al., Defendants-Appellants.
 No. 85-1365.
 United States Court of Appeals, Sixth Circuit.
 Oct. 6, 1986.
 
 On Appeal from the United States District Court for the Eastern District of Michigan.
 Before: JONES and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment on a question of insurance coverage with respect to a trade secrets/unfair competition case brought against the insured by a competitor. The complaint filed in the underlying action did not expressly allege facts that would have entitled the insured to coverage as to any of the competitor's claims, but neither was the complaint inconsistent with the existence of such facts. The insurance company sued its insured for a declaratory judgment, and the parties filed cross motions for summary judgment. Possibly because each side feared that the underlying facts, if known to the trial court, would be deemed favorable to the other side, neither saw fit to support its summary judgment motion with affidavits or other materials that would have permitted an informed judgment as to coverage. On such a record, we do not believe the case was ripe for summary disposition.
 
 
 2
 * The plaintiff in the underlying trade secrets case, Chemfil Corporation, brought an action in a Michigan state court against Widger Chemical Corporation, a Widger subsidiary, and four Widger employees. Widger Chemical was a named insured under a comprehensive general liability insurance policy issued by Lexington Insurance Co.
 
 
 3
 Under an endorsement to the policy, the insurance company undertook to pay "all sums which the insured shall become legally obligated to pay as damages because of ... advertising injury to which this insurance applies...." The endorsement further obligated the insurance company "to defend any suit against the insured seeking damages on account of such [advertising] injury even if any of the allegations of the suit are [sic] groundless, false or fraudulent...."
 
 
 4
 "Advertising injury" was defined as meaning "injury arising out of an offense ... occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan."
 
 
 5
 The endorsement excluded coverage for "advertising injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured." The endorsement also excluded from coverage "any injury arising out of any act committed by the insured with actual malice."
 
 
 6
 Chemfil Corporation's verified complaint alleged, in essence, that Chemfil was in the business of formulating, manufacturing and selling chemical products to the automotive industry; that the defendant individuals (one of whom was a co-founder of Chemfil) were former Chemfil employees who had quit their jobs and gone to work for Widger Chemical, taking with them various trade secrets and confidential and proprietary information; that they wrongfully disclosed this material to Widger Chemical; that Widger Chemical then offered Chemfil's principal automotive customers a chemical product apparently based on Chemfil's proprietary formulation and substantially identical to a Chemfil product called "Chemwhite; " that defendants offered Chemfil's customers products allegedly "equivalent" to Chemfil's; that "Defendants have committed other acts of unfair competition under the laws of [Michigan], including without limitation attempting to palm-off or substitute Defendant's chemical products as allegedly 'equivalent' to Plaintiff's unique and proprietary products, some of which had never been formulated or manufactured by Defendants; " and that the defendants conspired to commit various wrongful acts specified in the complaint. Chemfil prayed for injunctive relief, an order for restitution of proprietary or trade secret information, an accounting of profits, and monetary damages.
 
 
 7
 Widger Chemical arranged to have a copy of the complaint sent to the insurance company, but retained its own counsel to defend Chemfil's action. It is undisputed that counsel of Widger Chemical's choice controlled the defense from the beginning. The record before us is silent as to the course of the action after the filing of the Chemfil complaint. We have no way of knowing whether any discovery was conducted, or what the results of any such discovery might have been.
 
 
 8
 The insurance company filed the instant declaratory judgment action some fourteen months after the filing of Chemfil's complaint. The motion for summary judgment was filed at a time when Chemfil's action had been pending for more than two years. After filing a cross motion for summary judgment, the defendants (hereinafter referred to as "Widger") filed an "answer" and brief arguing that one or more of the unfair competition claims in Chemfil's complaint came within the "advertising injury" provisions of the endorsement of the policy. The insurance company then filed a supplemental brief pointing out, among other things, that "nowhere in the [Chemfil] complaint is there a single word about advertising, nor is there any suggestion that the defendants even engaged in any advertising, let alone tortious advertising." (Emphasis in the original.)
 
 
 9
 When the cross motions for summary judgment came on for hearing before the district court, counsel for the defendants admitted that "[t]here is no discussion of advertising in the [Chemfil] complaint," but went on to contend that "[i]t is inherent that there would be advertising" in the marketing of the industrial products in question. Counsel then represented to the court that the defendants "have done direct mail advertising to potential customers; they have brochures for salesmen that they routinely hand out on a sales call and, in fact, they have recently and in the past ... exhibited these products at trade shows." This unsworn hearsay was not supported by affidavits, deposition testimony, or answers to interrogatories or requests to admit. If it had been, the trial court might well have denied the insurance company's motion for summary judgment; instead, with nothing before it but the Chemfil complaint, the court granted the motion. The court found no merit in Widger's contention that Chemfil was asserting a claim for "advertising injury," and the court declared that any such claim would be excluded from coverage in any event as a claim for "advertising injury arising out of the wilful violation of a penal statute...."
 
 II
 
 10
 We are not persuaded that the use of advertising is "inherent" in the marketing activities of which Chemfil complained, but neither is it inherently unlikely that Widger would have employed advertising in those activities. In this respect the situation presented here is similar to that in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir.1949), an insurance case where the underlying complaint neither expressly alleged nor expressly negated the existence of facts that would have brought the asserted liability within the terms of the policy. In that case, as in this one, it did not matter to the tort claimant whether his injury was occasioned by activity of a kind to which the policy applied; the plaintiff having no particular reason to address that question, the complaint did not answer it. In affirming a summary judgment holding that the insurance company had a duty to defend, the Court of Appeals, in an opinion written by Judge Learned Hand, said this:
 
 
 11
 "Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases--the case at bar was one--it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer." 178 F.2d at 752.
 
 
 12
 Under Michigan law, which is controlling in this diversity action, "[a]n insurer has a duty to defend, despite theories of liability asserted against [the] insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." Detroit Edison Co. v. Michigan Mutual Insurance Co., 102 Mich.App. 136, 142, 301 N.W.2d 832, 835 (1980). The opinion in that case goes on to say that "[t]he duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." Id.
 
 
 13
 Coverage is "possible" in the instant case if--and only if--the injury asserted by Chemfil is one arising out of an offense "occurring in the course of the named insured's advertising activities." (Widger's brief seems to suggest that any claim for piracy or unfair competition would be covered even if it did not arise out of Widger's advertising activities, but there is no basis for that suggestion in the language of the policy.) Widger is in a better position than anyone else to know whether any of its alleged offenses occurred in the course of its advertising activities, and its failure to favor the trial court with an affidavit setting forth the pertinent facts does not seem to bespeak unlimited confidence that the facts would support a finding of coverage under the policy. On the other hand, as Judge Hand's opinion in Lee suggests, it would not be difficult for the insurance company to compel either the injured party or the insured to disclose precisely how the alleged injury is supposed to have occurred. A party moving for summary judgment has the burden of showing "no genuine issue as to any material fact," Rule 56(c), Fed.Rules Civ.Proc., and in our opinion the insurance company has not made such a showing.
 
 
 14
 Ours has not been shown to be a situation like that presented in S.J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235, 237-38 (6th Cir.), cert. denied, 375 U.S. 824 (1963), where the basic facts were not in dispute but the parties had a good faith disagreement about the inferences to be drawn from those facts. We have no way of knowing what the basic facts are in this case; we do not know whether Widger in fact made any mailings to prospective customers, or how often any such mailings occurred, or how numerous any such mailing pieces may have been, or what their contents may have been, or whether Widger products were advertised in brochures handed out by salesman, or whether any products that Widger may have advertised are in fact products about which Chemfil is complaining. Under the 1963 amendment of Fed.Rule Civ.Proc. 56(e), an affirmative showing by the insurance company that none of the alleged offenses occurred in the course of advertising activities would have meant that Widger could no longer rest on the mere allegations of coverage. Had the insurance company made an appropriate factual presentation not contested by Widger in the manner contemplated by Rule 56(e), the 1963 amendment and the subsequent case law (see, for example, Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. ---, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) suggest that the trial court could then have proceeded to determine the rights of the parties even if the parties still disagreed about the inferences to be drawn from the facts. This would be so, absent any showing of the existence of a genuine factual issue for trial, even if the legal questions thus presented proved difficult to answer. Where neither party has shown what the basic facts are, however, summary judgment is inappropriate.
 
 
 15
 What we have said about the need for a factual showing as to the existence, character and extent of any advertising activities on the part of Widger applies also to the questions whether Widger's alleged misconduct constituted a "wilful violation of a penal statute" and whether any "advertising injury" arose out of an act committed with actual malice. These are questions that cannot properly be decided in a factual vacuum.
 
 
 16
 Accordingly, the summary judgment is REVERSED and the case is REMANDED to the district court for reinstatement on the docket.